SEYFARTH SHAW LLP
Laura Wilson Shelby (SBN 151870)
lshelby@seyfarth.com
Leo Li (SBN 293539)
lli@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendant
AI CALIFORNIA, LLC
(erroneously sued as ALDI FOODS, INC.)

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

RICHARD ERWIN, on behalf of himself and all others similarly situated,

Plaintiff,

v.

ALDI FOODS, INC, an Illinois corporation, and DOES 1 through 50, inclusive,

Defendants.

**CLASS ACTION**

Case No. 1:22-cv-01207-ADA-BAM

**DEFENDANT AI CALIFORNIA, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

Date: December 5, 2022
Time: 1:30 pm
Location: Courtroom 1, 8th Floor

Trial Date: None Set
Date Action Filed: July 25, 2022

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. RELEVANT FACTUAL AND PROCEDURAL HISTORY ..... 1

A. Plaintiff Was A Former Employee Of Defendant and Entered Into An Arbitration Agreement With Defendant ..... 1

B. Although Plaintiff Agreed To Arbitrate All California Labor Code Claims, He Has Commenced A Class Action Against Defendant To Pursue The Same Claims ..... 1

C. Plaintiff Has Ignored Defendant's Numerous Requests To Arbitrate His Claims ..... 2

III. THE ARBITRATION AGREEMENT IS VALID AND SUPPORTED BY SUFFICIENT CONSIDERATION ..... 3

A. Plaintiff Knowingly And Voluntarily Signed An Arbitration Agreement ..... 3

B. Plaintiff's Electronic Signature Is Valid Because The Arbitration Agreement Was Presented To And Signed By Plaintiff Through A Secure Electronic Signature System ..... 4

C. There Is Sufficient Consideration To Support A Valid Arbitration Agreement ..... 5

IV. THE FAA REQUIRES RIGOROUS ENFORCEMENT OF ARBITRATION AGREEMENT AND THE FAA APPLIES TO THIS CASE BECAUSE DEFENDANT IS ENGAGED IN INTERSTATE COMMERCE ..... 5

V. PLAINTIFF'S CLAIMS ARE ARBITRABLE BECAUSE THEY ARE EXPLICITLY COVERED UNDER THE ARBITRATION AGREEMENT ..... 7

A. Plaintiff's Claims Are Within The Scope Of The Arbitration Agreement ..... 7

B. Plaintiff Cannot Pursue Class Action Claims Because The Arbitration Agreement Contains A Valid And Enforceable Class Action Waiver ..... 7

VI. THERE ARE NO BARRIERS TO ENFORCEMENT OF THE ARBITRATION AGREEMENT ..... 9

A. The Arbitration Agreement Is Lawful Because It Satisfies All Of The Requirements Under *Armendariz* ..... 9

1. The Arbitration Agreement Provides For A Neutral Arbitrator ..... 9

2. The Arbitration Agreement Allows Adequate Discovery ..... 9

3. The Arbitration Agreement Requires A Written Award ..... 10

4. The Arbitration Agreement Permits All Types Of Relief That Would Otherwise Be Available In Court ..... 10

5. The Arbitration Agreement Does Not Require The Employee To Pay Costs Unique To Arbitration ..... 10

B. The Arbitration Agreement Is Not Unconscionable ........ 11

1. The Arbitration Agreement Is Not Procedurally Unconscionable ........ 11

2. The Arbitration Agreement Is Not Substantively Unconscionable ........ 12

C. The Court Should Sever Any Term It Deems Unconscionable ........ 12

VII. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Allied-Bruce Terminix Companies, Inc. v. Dobson*,
513 U.S. 265 (1995) .......... 6

*AT&T Mobile LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 6, 8

*AT&T Techs., Inc. v. Comm'ns Workers of Am.*,
475 U.S. 643 (1986) .......... 7

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) .......... 7, 8

*Circuit City Stores, Inc. v Nojd*,
294 F.3d 1104 (9th Cir. 2002) .......... 5

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) .......... 6

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) .......... 6, 8

*Galvan v. Michael Kors USA Holdings, Inc.*,
2017 WL 253985 (C.D. Cal. Jan. 19, 2017) .......... 4

*Moses H. Cone Mem'l Hosp. v. Mercury*,
460 U.S. 1 (1983) .......... 7

*Nanavati v. Adecco USA, Inc.*,
99 F. Supp. 3d 1072 (N.D. Cal. 2015) .......... 5

*United States Ex. rel. Oliver v. Parsons Co.*,
195 F.3d 457 (9th Cir. 1999) .......... 3

*Perry v. Thomas*,
482 U.S. 483 (1987) .......... 6, 7, 8

*SI V, LLC v. FMC Corp.*,
223 F. Supp. 2d 1059 (N.D. Cal. 2002) .......... 13

*Smith v. Patina Rest. Grp., LLC*,
2019 WL 6434697 (C.D. Cal. Aug. 20, 2019) .......... 4

*Williams v. Eaze Solutions, Inc.*,
417 F. Supp. 3d 1233 (N.D. Cal. 2019) .......... 6

**State Cases**

*Armendariz v. Found. Health Psyc. Servs., Inc.*,
24 Cal. 4th 83 (2000) ........ 9, 10, 11, 13

*Bolter v. Superior Court*,
87 Cal. App. 4th 900 (2001) ........ 13

*Dotson v. Amgen, Inc.*,
181 Cal. App. 4th 975 (2010) ........ 13

*Espejo v. S. Calif. Permanente Med. Grp.*,
246 Cal. App. 4th 1047 (2016) ........ 5

*Lagatree v. Luce, Forward, Hamilton & Scripps*,
74 Cal. App. 4th 1105 (1999) ........ 5

*Lane v. Francis Capital Mgmt. LLC*,
224 Cal. App. 4th 676 (2014) ........ 10

*Little v. Auto Stiegler, Inc.*,
29 Cal. 4th 1064 (2003) ........ 12

*McManus v. CIBS World Mkt. Corp.*,
109 Cal. App. 4th 76 (2003) ........ 11

*Oakland-Alameda Cnty. Coliseum Auth. v. CC Partners*,
101 Cal. App. 4th 635 (2002) ........ 13

*Roman v. Superior Court*,
172 Cal. App. 4th 1462 (2009) ........ 10, 12

*Serafin v. Balco Properties Ltd., LLC*,
235 Cal. App. 4th 165 (2015) ........ 12

*Serpa v. Cal. Surety Investigations, Inc.*,
215 Cal. App. 4th 695 (2013) ........ 12

*Stirlen v. Supercuts, Inc.*,
51 Cal. App. 4th 1519 (1997) ........ 11

*Vianna v. Doctor's Management Co.*,
27 Cal. App. 4th 1186 (1994) ........ 7

**Federal Statutes**

Class Action Fairness Act, 28 U.S.C. § 1332 ........ 2

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ........ 8

Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ........ 6, 7, 8

National Labor Relations Act, 29 U.S.C. § 150 *et seq.* ........ 8

**State Statutes**

Cal. Bus. & Prof. Code §§ 17200–17208 ........ 2

Cal. Civ. Code § 1550 ........ 3

Cal. Civ. Code § 1633.7 ........ 5

Cal. Civ. Code § 1670.5 ........ 13

Cal. Lab. Code §§ 201-203 ........ 2

Cal. Lab. Code § 204 ........ 2

Cal. Lab. Code § 226 ........ 2

Cal. Lab. Code § 226.7 ........ 2

Cal. Lab. Code § 229 ........ 7, 8

Cal. Lab. Code § 512 ........ 2

Cal. Lab. Code § 1194 ........ 2

Cal. Lab. Code § 1199 ........ 2

Cal. Lab. Code § 2802 ........ 2

## I. INTRODUCTION

Defendant AI California, LLC, erroneously sued as ALDI Foods, Inc., (“Defendant”) moves to compel Plaintiff Richard Erwin (“Plaintiff”) to arbitrate his claims in binding arbitration on an individual basis pursuant to a valid and enforceable written Agreement to Arbitrate (the “Arbitration Agreement”).

As discussed in detail below, the Arbitration Agreement expressly covers all of the claims asserted in this lawsuit. The Arbitration Agreement also contains a class action waiver that requires Plaintiff to arbitrate his claims on an ***individual*** basis only and precludes him from pursuing any class action claims.

Prior to filing this Motion, Defendant emailed Plaintiff’s counsel five times and telephoned Plaintiff’s counsel to schedule a pre-filing conference in an attempt to avoid filing an unnecessary motion. Yet, Plaintiff has simply ignored each request, which necessitated this Motion. To date, Plaintiff has failed to provide any basis for opposing the motion or articulate any reason as to why the Arbitration Agreement should not be enforced.

For the reasons stated in more detail below, Defendant respectfully requests that the Court issue an order that (1) compels Plaintiff to arbitrate his individual claims, and (2) dismisses the remaining class action claims.

## II. RELEVANT FACTUAL AND PROCEDURAL HISTORY

### A. Plaintiff Was A Former Employee Of Defendant and Entered Into An Arbitration Agreement With Defendant

Defendant is a retailer and operates grocery stores throughout California. Defendant employed Plaintiff as a Store Associate from approximately March 26, 2020, through July 25, 2021. (Jay Decl. ¶ 6.) While Plaintiff was employed by Defendant, he voluntarily entered into an arbitration agreement with Defendant to resolve any “claims for violation of any federal, state or other government law,” including “the California Labor Code.” (Jay Decl. ¶ 12, Ex. A.)

### B. Although Plaintiff Agreed To Arbitrate All California Labor Code Claims, He Has Commenced A Class Action Against Defendant To Pursue The Same Claims

On July 25, 2022, Plaintiff filed this class action in the Superior Court of California asserting eight causes of action for violation of the California Labor Code against Defendant: (1) Failure to Pay Wages

(Lab. Code §§ 1194, 1199); (2) Failure to Provide Lawful Meal Periods Or Compensation in Lieu Thereof (Lab. Code §§ 226.7, 512, IWC Wage Orders); (3) Failure to Provide Rest Periods Or Compensation In Lieu Thereof (Lab. Code §§ 226.7, IWC Wage Orders); (4) Failure to Reimburse Employees (Lab. Code § 2802); (5) Failure to Timely Pay Wages During Employment (Lab. Code § 204); (6) Failure to Timely Pay Wages Due at Termination (Lab. Code. §§ 201–203); (7) Knowing and Intentional Failure to Comply With Itemized Employee Statement Provisions (Lab. Code § 226(b)); and (8) Violation of Unfair Competition Law (Bus. & Prof. Code §§ 17200–17208). (Complaint, Dkt. 1 at Ex. A, ¶¶ 32–71.)

On September 22, 2022, Defendant timely removed this case to federal court under the Class Action Fairness Act. (Dkt. 1.)

### C. Plaintiff Has Ignored Defendant's Numerous Requests To Arbitrate His Claims

On September 27, 2022, Defendant, through counsel, contacted counsel for Plaintiff by email and advised Plaintiff's counsel that Plaintiff had entered into an arbitration agreement and requested Plaintiff to dismiss his class action claims and agree to arbitrate his individual claims. (Li Decl. ¶ 3.) Plaintiff's counsel did not respond. (Li Decl. ¶ 3.)

On September 29, 2022, Defendant, through counsel, again contacted counsel for Plaintiff and formally requested a meet and confer regarding the instant motion pursuant to the Court's Standing Order. (Li Decl. ¶ 4, Ex. A.) Again, Plaintiff's counsel did not respond. (Li Decl. ¶ 4.)

On October 10, 2022, Defendant, through counsel, contacted Plaintiff's counsel by phone to ascertain Plaintiff's position with respect to dismissing his class action claims and agreeing to arbitrate his individual claims. (Li Decl. ¶ 5.) Plaintiff's counsel, Isandra Fernandez, represented that Plaintiff was considering whether or not to dismiss the class action allegations in his complaint in favor of adding a PAGA claim and that Plaintiff's position would depend upon whether or not Plaintiff believed there are grounds to contest the agreement. (Li Decl. ¶ 6, Ex. B.) Plaintiff's counsel also represented that she would need to review the Arbitration Agreement and that she would respond to Defendant's previous inquiry by the morning of October 11, 2022. (*Id.*) Defendant, through counsel, sent an email confirming that conversation. (Li Decl. ¶ 7, Ex. B.) Again, Plaintiff's counsel did not respond to Defendant's inquiry on October 11, 2022. (Li Decl. ¶ 7.)

On October 12, 2022, Defendant, through counsel, wrote to Plaintiff's counsel and advised that Defendant had not received a response to its inquiry about Plaintiff's position and asked Plaintiff's counsel to respond as soon as they were able. (Li Decl. ¶ 8, Ex. C.)

On October 24, 2022, Defendant, through counsel, emailed Plaintiff's counsel again to request for a pre-filing conference to discuss the instant Motion. (Li Decl. ¶ 9, Ex. D.) Again, Plaintiff's counsel did not respond to Defendant's email. (Li Decl. ¶ 9.)

Despite five emails and one phone call in four weeks, Plaintiff's counsel neither responded to Defendant's request for a pre-filing conference nor indicated whether they will oppose Defendant's Motion, or the basis for the opposition, if any. (Li Decl. ¶ 10.) Accordingly, Defendant has no choice but to file the instant motion to enforce the arbitration agreement.

## III. THE ARBITRATION AGREEMENT IS VALID AND SUPPORTED BY SUFFICIENT CONSIDERATION

There can be no dispute about the existence of a valid arbitration agreement. A valid contract under California law requires "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." *United States Ex. rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code § 1550.)

### A. Plaintiff Knowingly And Voluntarily Signed An Arbitration Agreement

There is no question that the parties were capable of contracting and consented to arbitration of disputes arising from or relating to their employment relationship—Defendant presented Plaintiff with the Arbitration Agreement, and Plaintiff signed the Arbitration Agreement under a valid electronic signature procedure. (Jay Decl. ¶ 9.)

During Plaintiff's employment, Defendant presented its arbitration agreement to him through an electronic notice and signature procedure. (Jay Decl. ¶ 9–10.) Plaintiff had an opportunity to print and review the Arbitration Agreement. (Jay Decl. ¶ 11.) The Arbitration Agreement also contained the JAMS Employment Arbitration Rules and Procedures that apply to any arbitration under the Arbitration Agreement. (Jay Decl. ¶ 11.) If Plaintiff had any questions about the Arbitration Agreement before signing it, he could have asked his manager or Human Resources. (Jay Decl. ¶ 11.) Further, the Arbitration Agreement instructed Plaintiff that "[i]f [he] ha[s] any questions regarding the Mutual Agreement to

Arbitrate Claims or wish[es] to receive a copy of the JAMS Employment Arbitration Rules & Procedures, [he is] to contact the Legal team at legal@aldi.us." (Jay Decl. ¶ 12, Ex. A.)

### B. Plaintiff's Electronic Signature Is Valid Because The Arbitration Agreement Was Presented To And Signed By Plaintiff Through A Secure Electronic Signature System

Defendant requires new employees to sign arbitration agreements. (Jay Decl., ¶ 8.) Defendant distributes its arbitration agreements via one of its electronic systems called MyHR. (*Id.* at ¶ 8.) Defendant's MyHR online portal presents the arbitration agreement to prospective employees. (*Id.* at ¶ 8.)

When Plaintiff applied for employment, Defendant required him to create his MyHR account and set a unique password that only gave him access to his MyHR account. (*Id.* at ¶ 10.) Under Defendant's policies, passwords associated with MyHR must be kept confidential to ensure system security and secure access to Defendant's information systems. (*Id.* at ¶ 10.) Through MyHR, Plaintiff and only Plaintiff could have accessed and electronically signed the Arbitration Agreement. (*Id.* at ¶ 10.) Based on Defendant's records, Plaintiff electronically signed the Arbitration Agreement on April 9, 2020. (*Id.* at ¶ 12, Ex. A.)

Given that Plaintiff had to create a personal and password-protected MyHR account to access and sign the Arbitration Agreement, there can be no dispute that Defendant has satisfied its burden of establishing the existence of a valid arbitration agreement. *See, e.g.*, *Smith v. Patina Rest. Grp., LLC*, 2019 WL 6434697, at *4 (C.D. Cal. Aug. 20, 2019) (finding adequate authentication where defendant "described in detail the steps of the onboarding process, clarifying that the process could not have been completed by anyone who did not possess Plaintiff's private user id and pin number, and that Plaintiff could not have completed the onboarding process without signing the arbitration agreement. "); *Galvan v. Michael Kors USA Holdings, Inc.*, 2017 WL 253985, at *4 (C.D. Cal. Jan. 19, 2017) ("Defendants have offered a detailed explanation of the US Verify system and its inherent security mechanisms to ensure the identity and knowledgeable assent of its new associates: associates are required to enter personal identifying information, proceed through various agreements one-by-one, confirm that their electronic signature will have the same effect as their signature, and finally, receive a confirmation of the various agreements they have viewed and/or accepted."); *Nanavati v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1076 (N.D. Cal. 2015) (finding that a declaration from the employer "easily satisfies Defendant's low burden to authenticate Plaintiff's electronic signature and establish the existence of a valid arbitration

agreement"); *see also Espejo v. S. Calif. Permanente Med. Grp.*, 246 Cal. App. 4th 1047 (2016) (holding that electronic signatures in arbitration agreements are valid where the defendant's supporting declaration "detailed [its] security precautions regarding transmission and use of an applicant's unique username and password, as well as the steps an applicant would have to take to place his or her name on the signature line of the employment agreement and the DRP"); *accord* Cal. Civ. Code § 1633.7(a) (Electronic Transaction Act provides that a "signature may not be denied legal effect or enforceability solely because it is in electronic form[,]" or "because an electronic record was used in its formation.").

### C. There Is Sufficient Consideration To Support A Valid Arbitration Agreement

There also can be no dispute that the arbitration agreement is supported by sufficient consideration because both Defendant and Plaintiff mutually agreed that "any employment-related legal claims or controversies … that Employee may have against the Company, or that the Company may have against Employee, must be resolved by arbitration instead of the courts, and the parties mutually waive their right to a trial before a judge or jury in federal or state court in favor of arbitration under this Agreement." (Jay Decl. ¶ 12, Ex. A at pg. 2.) Further, the Arbitration Agreement expressly recited that mutual promise as consideration, stating "[t]he mutual promises by Employee and the Company to arbitrate Claims, rather than litigate them before courts or other bodies, provide consideration for each other." (Jay Decl. ¶ 12, Ex. A at pg. 4.)

Given that there is a mutual agreement to arbitrate employment-related claims, there is valid consideration to enforce the Arbitration Agreement. *See Circuit City Stores, Inc. v Nojd*, 294 F.3d 1104, 1108 (9th Cir. 2002) ("[An employer's] promise to be bound by the arbitration process itself serves as adequate consideration. "); *see also Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1126 (1999) ("'Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other.'").

## IV. THE FAA REQUIRES RIGOROUS ENFORCEMENT OF ARBITRATION AGREEMENT AND THE FAA APPLIES TO THIS CASE BECAUSE DEFENDANT IS ENGAGED IN INTERSTATE COMMERCE

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, is controlling in this case. The U.S. Supreme Court has consistently held that the FAA "embodies Congress' intent to provide for the enforcement

of arbitration agreements within the full reach of the Commerce Clause." *Perry v. Thomas*, 482 U.S. 483, 490 (1987); *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (same).

"Congress adopted the Arbitration Act in 1925 in response to a perception that courts were unduly hostile to arbitration." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). The "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobile LLC v. Concepcion*, 563 U.S. 333, 344 (2011). The FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp.*, 138 S. Ct. at 1621.

The FAA governs any arbitration agreement that affects commerce in any way, including where the company offering the agreement merely receives goods or resources from out of state. *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 274, 282 (1995) ("After examining the [FAA's] language, background, and structure, we conclude that the word 'involving' is broad and is indeed the functional equivalent of 'affecting.'").

Here, the FAA applies to the Arbitration Agreement. There is no dispute that Defendant is engaged in interstate commerce because Plaintiff and Defendant expressly acknowledged and agreed that fact in the Arbitration Agreement—"The Company is engaged in interstate commerce; thus, interpretation and enforcement of this Agreement shall be governed by the Federal Arbitration Act." (Jay Decl. ¶ 12, Ex. A at pg. 4.) More importantly, because Plaintiff and Defendant agreed that the FAA shall control the interpretation and enforcement of the Arbitration Agreement, the Court should apply that law to the agreement. *E.g. Williams v. Eaze Solutions, Inc.*, 417 F. Supp. 3d 1233, 1238 (N.D. Cal. 2019) ("Consequently, the FAA controls. The parties could have agreed otherwise, but they did not do so. The terms of service expressly state that the 'Federal Arbitration Act will govern the interpretation and enforcement' of the dispute resolution section.") (internal citations omitted).

Thus, employment disputes between Plaintiff and Defendant are governed by the FAA. *Epic Sys. Corp.*, 138 S. Ct. 1612, 1632 (holding, in the context of arbitration agreements with class and collective action waivers, that "Congress has instructed that arbitration agreements like those before us must be enforced as written."). *Accord Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (holding "arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law.");

*Perry*, 482 U.S. at 484, 492 (holding "§ 2 of the Federal Arbitration Act preempts § 229 of the California Labor Code" which stated that "actions for the collection of wages may be maintained 'without regard to the existence of any private agreement to arbitrate.'").

## V. PLAINTIFF'S CLAIMS ARE ARBITRABLE BECAUSE THEY ARE EXPLICITLY COVERED UNDER THE ARBITRATION AGREEMENT

### A. Plaintiff's Claims Are Within The Scope Of The Arbitration Agreement

There is no dispute that the Arbitration Agreement encompasses all of the claims asserted in this lawsuit. The Arbitration Agreement provides that Plaintiff and Defendant agree to arbitrate "***any*** employment-related legal claims or controversies" arising out of Plaintiff's employment. (Jay Decl., ¶ 12, Ex. A at pg. 2.) In fact, the Arbitration Agreement expressly covers "claims for violation of any federal, state or other government law," including "***the California Labor Code***." (*Id.*)

Given that the operative Complaint is premised on alleged Labor Code violations, there can be no dispute that all of Plaintiff's claims fall squarely within the scope of the Arbitration Agreement. (Compl. ¶¶ 32–71.) Even if there were doubt as to whether the Arbitration Agreement covered the dispute, such doubt must be resolved in favor of arbitration. *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (doubts as to whether an asserted dispute is covered by an arbitration clause "should be resolved in favor of coverage") (internal quotes omitted); *Moses H. Cone Mem'l Hosp. v. Mercury*, 460 U.S. 1, 24-25 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *Vianna*, 27 Cal. App. 4th at 1189 (any "[d]oubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration.") (quotations and citation omitted). Based on the plain language of the April 9, 2020 Arbitration Agreement, the Court should grant the Motion.

### B. Plaintiff Cannot Pursue Class Action Claims Because The Arbitration Agreement Contains A Valid And Enforceable Class Action Waiver

Plaintiff may not pursue any class action claims against Defendant because he expressly waived the right to bring a class action against Defendant. Under the "Waiver of Class, Collective, and Representative Claims" provision of the Arbitration Agreement, Plaintiff and Defendant agreed that "all Claims may only be brought in the party's ***individual capacity***, and not as a plaintiff or class member in

any class, collective or representative proceeding." (Jay Decl. ¶ 12, Ex. A at pg. 2.) Plaintiff further agreed that "[n]o party may bring a claim on behalf of other individuals…." (*Id.*)

It is now well-settled that a class action waiver is enforceable. The decision in *Epic Sys. Corp.*, 138 S. Ct. 1612, is directly on point. There, "an employer and an employee entered into a contract for individualized arbitration proceeding to resolve employment disputes between the parties." *Id.* at 1616. Despite the arbitration agreements, the "employee nonetheless sought to litigate Fair Labor Standards Act and related state law claims through class and collective action in federal court." *Id.* The employee argued that the FAA contains a "savings clause" which invalidates an arbitration agreements if the contract "violates some other federal law and that, by requiring individualized proceedings the agreements … violated the National Labor Relations Act." *Id.*

The U.S. Supreme Court disagreed. In holding that an arbitration agreement may lawfully prohibit class and collective action claims as a matter of contract between the parties, the Supreme Court stated that "[o]ur precedent clearly teaches that a contract defense 'conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures' is inconsistent with the Arbitration Act and its saving clause." *Id.* 1631 (citing *Concepcion*, 563 U.S. at 1740). As the Court concluded, "the law is clear: Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys. Corp.*, 138 S. Ct. at 1632. *Accord Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) ("arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law"); *Perry*, 482 U.S. at 483 ("clear federal policy places § 2 of the [FAA] in unmistakable conflict with California's § 229 requirement that litigants be provided a judicial forum for resolving wage disputes. Therefore, under the Supremacy Clause, the state statute must give way.").

Given that the United States Supreme Court has already held that class action waivers are valid and enforceable, Plaintiff may not pursue class action claims in court or arbitration, and must arbitrate his claims in his "individual capacity," as required under the Arbitration Agreement.

## VI. THERE ARE NO BARRIERS TO ENFORCEMENT OF THE ARBITRATION AGREEMENT

Plaintiff has no grounds to revoke the Arbitration Agreement because it complies with *Armendariz*'s basic fairness requirements, and neither procedural nor substantive unconscionability are present.

### A. The Arbitration Agreement Is Lawful Because It Satisfies All Of The Requirements Under *Armendariz*

The Arbitration Agreement signed by Plaintiff satisfies all of the requirements for "fairness" set forth in *Armendariz v. Found. Health Psyc. Servs., Inc.*, 24 Cal. 4th 83 (2000). In *Armendariz*, the California Supreme Court held that "an [employment] arbitration agreement ***is lawful*** if it '(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.'" *Id.* at 102.

#### 1. The Arbitration Agreement Provides For A Neutral Arbitrator

The Arbitration Agreement sets forth the procedure for selecting a neutral arbitrator. Specifically, the Arbitration Agreement provides that "[t]he arbitrator shall be neutral and selected by mutual agreement of the parties. If the parties are unable to agree upon an arbitrator, a list of nine (9) potential arbitrators will be submitted to the parties by JAMS. From that list, the parties will each have the opportunity to strike up to three names and 'rank' their preference for the remaining names, and JAMS shall select an arbitrator that is highest ranked by both parties and not stricken by either party." (Jay Decl. ¶ 12, Ex. A at pg. 3.)

#### 2. The Arbitration Agreement Allows Adequate Discovery

The Arbitration Agreement states that "[d]iscovery will be governed by the applicable JAMS Rules, including the exchange of relevant information prior to the arbitration hearing." (Jay Decl. ¶ 12, Ex. A at pg. 2.) Under the JAMS rules, the parties are required to "cooperate in good faith in the voluntary and informal exchange of all non-privileged documents and other information (including electronically stored information ('ESI')) relevant to the dispute or claim immediately after commencement of the Arbitration." (Jay Decl. ¶ 12, Ex. A at 11–12.)

The Arbitration Agreement places no limitations on discovery: "Discovery will be governed by the applicable JAMS Rules." (Jay Decl. ¶ 12, Ex. A at pg. 3) The JAMS rules provide the arbitrator with the discretion and authority to order discovery as is necessary "for a full and fair exploration of the issues in dispute." (*Id.* at pg. 11–12.) Parties are also entitled to "take at least one deposition of an opposing Party" and the JAMS Employment Arbitration Rules and Procedures supplies a process for resolving discovery disputes—"The Parties shall promptly notify JAMS when a dispute exists regarding discovery issues. A conference shall be arranged with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute." (Jay Decl. ¶ 12, Ex. A at 12) The process outlined in the agreement gives wide discretion to conduct reasonable discovery. *Armendariz*, 24 Cal.4th at 106 (discovery is adequate if claimant is "at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s) and subject to limited judicial review"); *Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676, 693 (2014) (holding that "by agreeing to arbitrate statutory claims, the employer impliedly agreed to all discovery necessary to adequately arbitrate the claims"); *Roman*, 172 Cal. App. 4th at 1476 ("There appears to be no meaningful difference between the scope of discovery approved in *Armendariz* and that authorized by the AAA employment dispute rules").

**3. The Arbitration Agreement Requires A Written Award**

The Arbitration Agreement mandates that "[t]he arbitrator will issue to the parties a written statement regarding the disposition of each claim and the relief, if any, awarded promptly after the proceedings" and that "[t]he arbitrator will also provide a written statement of the reasons for any award, stating the essential findings and conclusions on which it is based." (Jay Decl. ¶ 12, Ex. A at pg. 4.)

**4. The Arbitration Agreement Permits All Types Of Relief That Would Otherwise Be Available In Court**

The Arbitration Agreement provides that "[t]he arbitrator will have the authority to grant any appropriate remedy that would be available under applicable law in a court proceeding, whether legal or equitable."(Jay Decl. ¶ 12, Ex. A at pg. 4.)

**5. The Arbitration Agreement Does Not Require The Employee To Pay Costs Unique To Arbitration**

In the Arbitration Agreement, Defendant has expressly agreed that it will pay "all costs unique to arbitration, including the fees and costs of the arbitrator." (Jay Decl. ¶ 12, Ex. A at pg. 3.) Specifically, the

Arbitration Agreement only requires the employee to pay costs that would be incurred from filing the identical claims in state court, and provides that "[i]f Employee files for arbitration, Employee must pay the case filing fee charged by JAMS or the equivalent of the filing fee had Employee filed a complaint in state court, whichever is less." (Jay Decl. ¶ 12, Ex. A at pg. 3.) Further the agreement states that the "[e]mployee will not have to pay any case filing fees if doing so would render this Agreement unenforceable under applicable law." (Jay Decl. ¶ 12, Ex. A at pg. 3.)

**B. The Arbitration Agreement Is Not Unconscionable**

For an arbitration agreement to be rendered unenforceable based on its unconscionability, it must be **both** procedurally and substantively unconscionable. *Armendariz*, 24 Cal. 4th at 114 (holding that "[t]he prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability") (citing *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1533 (1997)).

Procedural unconscionability focuses on the factors of "oppression" and "surprise," and substantive unconscionability focuses on whether the agreement is "overly harsh" or "one-sided." *Armendariz*, 24 Cal. 4th at 114. These two elements are evaluated on a sliding scale. *McManus v. CIBS World Mkt. Corp.*, 109 Cal. App. 4th 76, 91 (2003) (stating that "a sliding scale is invoked whereby the more procedurally oppressive the arbitration clause is, the less evidence of substantive unconscionability is required to warrant the conclusion that the agreements to arbitrate are unenforceable."). Thus, even if an agreement is procedurally unconscionable, it may still be enforceable if there is not a considerable degree of substantive unconscionability (or vice versa). *Id.*

**1. The Arbitration Agreement Is Not Procedurally Unconscionable**

Even if the Arbitration Agreement is characterized as a "take-it-or-leave-it" requirement, "this adhesive aspect of an agreement is not dispositive." *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013). "[T]he degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.'" *Id.*

In *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165 (2015), the Court held that the employment arbitration agreement was enforceable, even though the agreement was "a form of contract of adhesion, which was presented to [the employee] on a 'take-it-or-leave-it basis.'" *Id.* at 179. The Court

held that "procedural unconscionability is 'limited'" because "the arbitration provisions were unquestionably highlighted for [the employee] in the two-page, freestanding document, relating solely to arbitration, that she received and signed." *Id. Accord Roman v. Superior Court*, 172 Cal. App. 4th 1462 (2009) (holding limited procedural unfairness where the arbitration agreement "was contained on the last page of a seven-page employment application, underneath the heading 'Please Read Carefully'").

Here, Defendant also highlighted the Arbitration Agreement to Plaintiff. As in *Serafin* and *Roman*, the Arbitration Agreement was presented to Plaintiff as a stand-alone document titled "**MUTUAL AGREEMENT TO ARBITRATE**." (Jay Decl. ¶ 12, Ex. A at pg. 2.) (emphasis in original.) The document was written in 12-point font with bolded and underlined descriptive headings, and required a separate electronic signature from Plaintiff. (Jay Decl. ¶ 12, Ex. A at pg. 2–4.)

**2. The Arbitration Agreement Is Not Substantively Unconscionable**

The Arbitration Agreement also is not substantively unconscionable. To find an agreement substantively unconscionable, the terms of the agreement must be "unfairly one-sided" as to "shock the conscience." *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003). "An arbitration agreement lacks "basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrences." *Serafin*, 235 Cal. App. 4th at 181.

Here, mutuality exists because the Arbitration Agreement applies to **both** Plaintiff and Defendant—"Company and Employee agree that any employment-related legal claims or controversies ("Claims") that Employee may have against the Company, or that the Company may have against Employee, must be resolved by arbitration instead of the courts, and the parties mutually waive their right to a trial before a judge or jury in federal or state court in favor of arbitration under this Agreement." (Jay Decl. ¶ 12, Ex. A at pg. 2.)

**C. The Court Should Sever Any Term It Deems Unconscionable**

Even if the Court determines that a provision of the Arbitration Agreement is unenforceable, it should modify or sever the offending portion. *Armendariz*, 24 Cal. 4th at 121-24; *Bolter v. Superior Court*, 87 Cal. App. 4th 900, 910-11 (2001) ("It is not necessary to throw the baby out with the bath water, i.e., the unconscionable provisions can be severed and the rest of the agreement enforced.").

This Court has discretion to sever or restrict any otherwise unenforceable provision and enforce the remainder of the Arbitration Agreement. *See* Cal. Civ. Code § 1670.5; *see also Dotson v. Amgen, Inc.*,

181 Cal. App. 4th 975, 985 (2010) (“ the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement”).

Courts are particularly inclined to sever an objectionable clause where the parties have agreed in an arbitration agreement to modify or sever any clause found to be invalid or unenforceable. *Oakland-Alameda Cnty. Coliseum Auth. v. CC Partners*, 101 Cal. App. 4th 635, 646 (2002) (declining invitation to invalidate entire arbitration agreement where to do so “would be ignoring the parties' intent that the remainder of their agreement ‘shall not be affected’ by the invalidity of any particular provision”); *SI V, LLC v. FMC Corp.*, 223 F. Supp. 2d 1059, 1063 (N.D. Cal. 2002) (“Since public policy dictates a strong preference for the enforcement of arbitration agreements, many California courts have ruled in favor of severing unenforceable provisions from these agreements.”). Here, the parties did just that.

The Arbitration Agreement states that “[i]f any provision of this Agreement is held to be invalid or unenforceable, in whole or in part, the remaining provisions shall continue to be valid and any unenforceable or conflicting provision shall be automatically severed.” (Jay Decl., ¶ 12, Ex. A at pg. 4.) Thus, in the event that the Court finds a provision to be unenforceable, the Court should modify or remove the offending provision and enforce the Arbitration Agreement.

## VII. CONCLUSION

For the reasons stated above, Defendant respectfully requests that the Court grant its Motion to Compel Arbitration and issue an order to (1) dismiss Plaintiff’s claims asserted against Defendant, without prejudice, including the dismissal of his class action claims, and (2) order Plaintiff to binding individual arbitration.

DATED: October 28, 2022

Respectfully submitted,

SEYFARTH SHAW LLP

By: *_/s/ Leo Q. Li_*

Laura Wilson Shelby
Leo Li
Attorneys for Defendant
AI CALIFORNIA, LLC
(erroneously sued as ALDI FOODS, INC.)