SEYFARTH SHAW LLP
Laura Wilson Shelby (SBN 151870)
lshelby@seyfarth.com
Leo Q. Li (SBN 293539)
lli@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendant
AI CALIFORNIA, LLC
(erroneously sued as ALDI FOODS, INC.)

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD ERWIN on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALDI Foods, Inc., an Illinois corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | **CLASS ACTION**<br><br>Case No. 1:22-cv-01207-ADA-BAM<br><br>**DECLARATION OF KURTIS JAY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Trial Date: None Set<br>Date Action Filed: July 25, 2022 |

**DECLARATION OF KURTIS JAY**

I, Kurtis Jay, declare and state as follows:

1. I have personal knowledge of the facts contained in this declaration, and if called as a witness, could and would testify as to their accuracy.

2. I am the Director of Administration for ALDI Inc. ("ALDI") and have been in this position since 2015. In this capacity, I am familiar with the corporate and organizational structure of ALDI and its subsidiary, AI California LLC ("AI").

3. My personal knowledge is based on my experience as a Director of Administration for ALDI, as well as my review of AI's documents, including documents related to Plaintiff Richard Erwin's ("Plaintiff") employment with AI, which were created and maintained in the ordinary course of business.

4. Because of my role with ALDI, I am familiar with its employment policies and practices, as well as its hiring processes. I am also familiar with AI's maintenance of employee personnel files. I have access to AI's current and former employees' personnel files, including the personnel file of Plaintiff. I am also familiar with and have access to AI's electronic systems used to maintain personnel records pertaining to its employees.

5. AI maintains employee personnel records, including personnel files and onboarding records of applicants, in the ordinary course of business, and it is the regular practice of AI to maintain accurate personnel records. These personnel records are created at or near the time of the personnel event, and are made by, or from information transmitted by, a person with knowledge of the events. I have reviewed the personnel records for Plaintiff, which are maintained by AI in the ordinary course of its business.

6. Based on my review of Plaintiff's personnel records, Plaintiff was hired by AI as a Store Associate on March 26, 2020 and was employed until July 25, 2021.

7. Based on my current role, I am also familiar with AI's electronic onboarding process for prospective employees. AI requires all applicants to apply for employment electronically. This process requires applicants to access AI's job portal online, to read information, understand questions pertaining to hiring qualifications and availability to work, and provide information on those different topics. AI

uses an online portal called "MyHR" to create and maintain all employee and applicant onboarding electronic records, including offer letters, arbitration agreements, and other new hire records.

8. Based on my current role, I have knowledge of AI's employment policies regarding arbitration agreements with AI's employees and prospective employees. AI's policies require new employees to sign an arbitration agreement. AI distributes its arbitration agreements to applicants via the MyHR online portal.

9. The MyHR system allows me to view an individual applicant's completed documents history to see when a prospective employee signed an arbitration agreement. I have reviewed AI's MyHR files, which show that AI presented Plaintiff with the Arbitration Agreement via MyHR, and Plaintiff signed the Arbitration Agreement under a valid electronic signature procedure.

10. When Plaintiff applied for employment, AI required him to create his MyHR account and set a unique password that only gave him access to his MyHR account. Under AI's policies, passwords associated with MyHR must be kept confidential to ensure system security and secure access to AI's information systems. Through MyHR, Plaintiff and only Plaintiff could have accessed and electronically signed the Arbitration Agreement.

11. Plaintiff had an opportunity to print and review the Arbitration Agreement. The Arbitration Agreement also contained the JAMS Employment Arbitration Rules and Procedures that apply to any arbitration under the Arbitration Agreement. If Plaintiff had any questions about the Arbitration Agreement before signing it, he could have asked a manager or Human Resources.

12. AI's business records reflect that Plaintiff electronically signed the Arbitration Agreement on April 9, 2020. Plaintiff's and AI's electronic signatures appear on page 22 of the Arbitration Agreement packet, which is the only signature block for the Arbitration Agreement. A true and correct copy of the arbitration agreement is attached hereto as **Exhibit A** (the "Arbitration Agreement").

\\\

\\\

\\\

\\\

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 26th day of October, 2022, at Moreno Valley, California.

KJ

Kurtis Jay

# Exhibit "A"

# In English: Pages 2 - 18

# En Español: Páginas 19 - 52

**MUTUAL AGREEMENT TO ARBITRATE CLAIMS**

This Mutual Agreement to Arbitrate Claims ("Agreement") is entered into between Aldi Inc. (including its supervisors, employees, agents, members, directors, officers, partners, shareholders, and any parent, subsidiary, affiliated or successor company) ("Company") and the undersigned employee (including his or her heirs, successors and assigns) ("Employee"). Acceptance of employment or continuation of employment with the Company is deemed to be acceptance of this Agreement. However, this Agreement is not a promise that employment will continue for any specified period of time or end only under certain conditions. Employment at the Company is a voluntary (at-will) relationship existing for no definite period of time, and this Agreement does not change that relationship.

**Claims Covered by This Agreement**

Company and Employee agree that any employment-related legal claims or controversies ("Claims") that Employee may have against the Company, or that the Company may have against Employee, must be resolved by arbitration instead of the courts, and the parties mutually waive their right to a trial before a judge or jury in federal or state court in favor of arbitration under this Agreement. This Agreement is intended to be both retrospective and prospective, and Claims is intended to include past, present, and future claims, including claims that may have originated or accrued prior to the signing of this Agreement. Claims include, but are not limited to, claims for wages and hour or other compensation due; disclosure of trade secrets; claims for breach of any contract or covenant (express or implied); tort claims; claims for harassment or discrimination (including, but not limited to, race, sex, religion, national origin, age, marital status, medical condition, handicap, disability or other protected characteristic under applicable discrimination law); claims for benefits other than those brought under the Employee Retirement Income Security Act ("ERISA"); and claims for violation of any federal, state or other governmental law, statute, regulation, ordinance or common law. This includes, but is not limited to, claims under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the California Labor Code, and all comparable laws.

**Claims Not Covered by This Agreement**

This Agreement does not preclude Employee from filing a claim or charge with a governmental administrative agency, such as the National Labor Relations Board (NLRB), the Department of Labor, or the Equal Employment Opportunity Commission. Claims for workers' compensation or unemployment compensation benefits are not covered by this Agreement. These claims are still filed by Employee with the relevant state administrative agency. In addition, claims under ERISA benefit plans and disputes under any applicable collective bargaining agreement and charges filed with the National Labor Relations Board are not covered by this Agreement. In addition, this Agreement does not preclude either Employee or the Company from seeking injunctive relief in a court of law in accordance with applicable law. However, after the Court has issued a ruling concerning the injunctive relief, Employee and the Company are required to submit the dispute to arbitration pursuant to this Agreement.

This Agreement does not apply to any claims that cannot be arbitrated as a matter of law. If the Company or Employee pursue Claims subject to this Agreement and claims that are excluded from this Agreement, then Claims subject to this Agreement must be arbitrated and claims that are not subject to this Agreement must be litigated in court. In no event will Claims subject to this Agreement be joined with claims not subject to this Agreement and litigated in court unless the Company and Employee both agree.

**Waiver of Class, Collective, and Representative Claims**

The Company and Employee agree that all Claims may only be brought in the party's individual capacity, and not as a plaintiff or class member in any class, collective or representative proceeding. No party may bring a claim on behalf of other individuals, except that if a waiver of representative claims is not permissible by law, Employee who is employed in the State of California may bring a claim under the California Private Attorneys General Act of 2004 in a court of competent jurisdiction for the recovery of civil penalties that are paid, in whole or in part, to the California Labor and Workforce Development Agency.

**Notice of Claim and Right to Be Represented**

A party wishing to make a claim must give written notice to the other party within the statutory period mandated by the applicable relevant federal, state, or local law. The written notice shall identify and describe the nature of all claims asserted and a summary of the facts upon which such claims are based. If Employee is the party bringing the Claim, Employee must send the notice to Aldi Inc., 1200 N. Kirk Road, Batavia, Illinois 60510. If the Company is the party bringing the claim, the Company must send the notice to Employee's most recent address in his/her personnel file.

**Arbitration Procedures**

Claims shall be resolved through binding arbitration to be administered by JAMS in accordance with its Employment Arbitration Rules & Procedures ("JAMS Rules") then in effect, except as otherwise modified herein. The current version of the JAMS Rules can be found at https://www.jamsadr.com/rules-employment-arbitration/english (English version), or at https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS-Spanish-Employment-Rules-2014.pdf (Spanish version), or can be requested from the Company. To the extent that there is any conflict between this program and the JAMS Rules, the provisions of this Agreement shall govern except as provided by applicable law. Arbitrations shall be held in or near the city in which Employee lives or was employed by the Company, unless the parties otherwise agree.

The arbitrator shall be neutral and selected by mutual agreement of the parties. If the parties are unable to agree upon an arbitrator, a list of nine (9) potential arbitrators will be submitted to the parties by JAMS. From that list, the parties will each have the opportunity to strike up to three names and "rank" their preference for the remaining names, and JAMS shall select an arbitrator that is highest ranked by both parties and not stricken by either party.

Discovery will be governed by the applicable JAMS Rules, including the exchange of relevant information prior to the arbitration hearing. Both parties will have the right to present proof, through testimony and documentary evidence, and to cross-examine witnesses.

If Employee files for arbitration, Employee must pay the case filing fee charged by JAMS or the equivalent of the filing fee had Employee filed a complaint in state court, whichever is less. Employee will not have to pay any case filing fees if doing so would render this Agreement unenforceable under applicable law. The Company pays all costs unique to arbitration, including the fees and costs of the arbitrator. Each party shall pay for its own costs, attorneys' fees and discovery expenses (such as depositions), if any. However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees and/or costs, or if there is a written agreement providing for fees and/or costs, the arbitrator may award reasonable fees and costs to the prevailing party, in accordance with such statute or agreement, if otherwise allowed by applicable law.

**Arbitrator's Authority**

The arbitrator may not (1) combine more than one individual's claim or claims into a single case, (2) participate in or facilitate notification of others of potential claims, or (3) arbitrate or preside over any form of a class, collective, or representative proceeding.

The arbitrator's authority shall be limited to deciding the case submitted by the parties to the arbitration. Therefore, no decision by any arbitrator shall serve as precedent in other arbitrations except to preclude the same claim from being re-arbitrated between the same parties.

The arbitrator shall apply the law applicable to the Claim(s) asserted. The arbitrator shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error.

If a party violates this Agreement by commencing an action asserting a Claim in a court of law, then the court (and not an arbitrator) shall have the authority to resolve any disputes about the interpretation, formation, existence, enforceability, validity, and scope of this Agreement, including the Waiver of Class, Collective, and Representative Claims. However, if a party complies with this Agreement and files for

arbitration without filing a complaint in a court of law, then the arbitrator shall have the authority to resolve any disputes about the interpretation of this Agreement for purposes of discovery or the merits of the underlying claim, but shall have no authority to resolve any disputes about the formation, existence, enforceability, or validity of this Agreement, including the Waiver of Class, Collective, and Representative Claims.

**Written Awards**

The arbitrator will issue to the parties a written statement regarding the disposition of each claim and the relief, if any, awarded promptly after the proceedings. The arbitrator will also provide a written statement of the reasons for any award, stating the essential findings and conclusions on which it is based. The arbitrator will have the authority to grant any appropriate remedy that would be available under applicable law in a court proceeding, whether legal or equitable. The arbitrator will have no authority to extend, modify or suspend any of the provisions of this Agreement, unless a provision conflicts with applicable law. The arbitration shall be final and binding upon the parties. Any judicial review of an arbitration written decision, including any petition to confirm an award, is dependent on applicable law.

**Validity of Agreement**

If any provision of this Agreement is held to be invalid or unenforceable, in whole or in part, the remaining provisions shall continue to be valid and any unenforceable or conflicting provision shall be automatically severed. However, if the Waiver of Class, Collective, and Representative Claims is found to be unenforceable, then any claim brought on a class, collective, or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims. The Company is engaged in interstate commerce; thus, interpretation and enforcement of this Agreement shall be governed by the Federal Arbitration Act. Petitions to compel arbitration or to modify, confirm or vacate any award may be brought in any court of competent jurisdiction, under either the Federal Arbitration Act or under applicable state law. However, the parties agree that California Code of Civil Procedure Section 1281.2(c) shall not apply. This Agreement sets forth the entire agreement between the parties hereto and fully supersedes any and all prior agreements and understandings, written or oral, between the parties hereto pertaining to the subject matter hereof.

**Consideration**

The mutual promises by Employee and the Company to arbitrate Claims, rather than litigate them before courts or other bodies, provide consideration for each other. Any failure to enforce this Agreement by Employee or Company shall not be deemed as a waiver or relinquishment of the right to enforce this Agreement in the future.

If I have any questions regarding the Mutual Agreement to Arbitrate Claims or wish to receive a copy of the JAMS Employment Arbitration Rules & Procedures, I am to contact the Legal team at legal@aldi.us.

# JAMS Employment Arbitration Rules & Procedures

*Effective July 1, 2014*

Table of Contents


| | |
|---|---|
| **Rule 1.** | **Scope of Rules** |
| **Rule 2.** | **Party Self-Determination** |
| **Rule 3.** | **Amendment of Rules** |
| **Rule 4.** | **Conflict with Law** |
| **Rule 5.** | **Commencing an Arbitration** |
| **Rule 6.** | **Preliminary and Administrative Matters** |
| **Rule 7.** | **Number and Neutrality of Arbitrators; Appointment and Authority of Chairperson** |
| **Rule 8.** | **Service** |
| **Rule 9.** | **Notice of Claims** |
| **Rule 10.** | **Changes of Claims** |
| **Rule 11.** | **Interpretation of Rules and Jurisdictional Challenges** |
| **Rule 12.** | **Representation** |
| **Rule 13.** | **Withdrawal from Arbitration** |
| **Rule 14.** | ***Ex Parte* Communications** |
| **Rule 15.** | **Arbitrator Selection, Disclosures and Replacement** |
| **Rule 16.** | **Preliminary Conference** |
| **Rule 17.** | **Exchange of Information** |
| **Rule 18.** | **Summary Disposition of a Claim or Issue** |
| **Rule 19.** | **Scheduling and Location of Hearing** |
| **Rule 20.** | **Pre-Hearing Submissions** |
| **Rule 21.** | **Securing Witnesses and Documents for the Arbitration Hearing** |
| **Rule 22.** | **The Arbitration Hearing** |
| **Rule 23.** | **Waiver of Hearing** |
| **Rule 24.** | **Awards** |
| **Rule 25.** | **Enforcement of the Award** |
| **Rule 26.** | **Confidentiality and Privacy** |
| **Rule 27.** | **Waiver** |
| **Rule 28.** | **Settlement and Consent Award** |
| **Rule 29.** | **Sanctions** |
| **Rule 30.** | **Disqualification of the Arbitrator as a Witness or Party and Exclusion of Liability** |
| **Rule 31.** | **Fees** |
| **Rule 32.** | **Bracketed (or High-Low) Arbitration Option** |
| **Rule 33.** | **Final Offer (or Baseball) Arbitration Option** |
| **Rule 34.** | **Optional Arbitration Appeal Procedure** |


## Rule 1. Scope of Rules

(a) The JAMS Employment Arbitration Rules and Procedures ("Rules") govern binding Arbitrations of disputes or claims that are administered by JAMS and in which the Parties agree to use these Rules or, in the absence of such agreement, the disputes or claims are employment-related, unless other Rules are prescribed.

(b) The Parties shall be deemed to have made these Rules a part of their Arbitration agreement ("Agreement") whenever they have provided for Arbitration by JAMS under its Employment Rules or for Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of this Rule.

(c) The authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration Committee ("NAC") or the office of JAMS General Counsel or their designees.

(d) JAMS may, in its discretion, assign the administration of an Arbitration to any of its Resolution Centers.

(e) The term "Party" as used in these Rules includes Parties to the Arbitration and their counsel or representatives.

(f) "Electronic filing" (e-file) means the electronic transmission of documents to and from JAMS and other Parties for the purpose of filing via the Internet. "Electronic service" (e-service) means the electronic transmission of documents via JAMS Electronic Filing System to a party, attorney or representative under these Rules.

## Rule 2. Party Self-Determination

(a) The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies (including, without limitation, the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness and Rules 15(i), 30 and 31). The Parties shall promptly notify JAMS of any such Party-agreed procedures and shall confirm such procedures in writing. The Party-agreed procedures shall be enforceable as if contained in these Rules.

(b) When an Arbitration Agreement provides that the Arbitration will be non-administered or administered by an entity other than JAMS and/or conducted in accordance with rules other than JAMS Rules, the Parties may subsequently agree to modify that Agreement to provide that the Arbitration will be administered by JAMS and/or conducted in accordance with JAMS Rules.

## Rule 3. Amendment of Rules

JAMS may amend these Rules without notice. The Rules in effect on the date of the commencement of an Arbitration (as defined in Rule 5) shall apply to that Arbitration, unless the Parties have agreed upon another version of the Rules.

## Rule 4. Conflict with Law

If any of these Rules, or modification of these Rules agreed to by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict, and no other Rule will be affected.

## Rule 5. Commencing an Arbitration

(a) The Arbitration is deemed commenced when JAMS issues a Commencement Letter based upon the existence of one of the following:

(i) A post-dispute Arbitration Agreement fully executed by all Parties specifying JAMS administration or use of any JAMS Rules; or

(ii) A pre-dispute written contractual provision requiring the Parties to arbitrate the employment dispute or claim and specifying JAMS administration or use of any JAMS Rules or that the Parties agree shall be administered by JAMS; or

(iii) A written confirmation of an oral agreement of all Parties to participate in an Arbitration administered by JAMS or conducted pursuant to any JAMS Rules; or

(iv) The Respondent's failure to timely object to JAMS administration; or

(v) A copy of a court order compelling Arbitration at JAMS.

(b) The issuance of the Commencement Letter confirms that requirements for commencement have been met, that JAMS has received all payments required under the applicable fee schedule and that the Claimant has provided JAMS with contact information for all Parties along with evidence that the Demand for Arbitration has been served on all Parties.

(c) If a Party that is obligated to arbitrate in accordance with subparagraph (a) of this Rule fails to agree to participate in the Arbitration process, JAMS shall confirm in writing that Party's failure to respond or participate, and, pursuant to Rule 19, the Arbitrator, once appointed, shall schedule, and provide appropriate notice of, a Hearing or other opportunity for the Party demanding the Arbitration to demonstrate its entitlement to relief.

(d) The date of commencement of the Arbitration is the date of the Commencement Letter but is not intended to be applicable to any legal requirements such as the statute of limitations, any contractual limitations period or claims notice requirements. The term "commencement," as used in this Rule, is intended only to pertain to the operation of this and other Rules (such as Rule 3, 13(a), 17(a), 31(a)).

## Rule 6. Preliminary and Administrative Matters

(a) JAMS may convene, or the Parties may request, administrative conferences to discuss any procedural matter relating to the administration of the Arbitration.

(b) If no Arbitrator has yet been appointed, at the request of a Party and in the absence of Party agreement, JAMS may determine the location of the Hearing, subject to Arbitrator review. In determining the location of the Hearing, such factors as the subject matter of the dispute, the convenience of the Parties and witnesses, and the relative resources of the Parties shall be considered, but in no event will the Hearing be scheduled in a location that precludes attendance by the Employee.

(c) If, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings. JAMS may so inform the Parties in order that one of them may advance the required payment. If one Party advances the payment owed by a non-paying Party, the Arbitration shall proceed, and the Arbitrator may allocate the non-paying Party's share of such costs, in accordance with Rules 24(f) and 31(c). An administrative suspension shall toll any other time limits contained in these Rules or the Parties' Agreement.

(d) JAMS does not maintain an official record of documents filed in the Arbitration. If the Parties wish to have any documents returned to them, they must advise JAMS in writing within thirty (30) calendar days of the conclusion of the Arbitration. If special arrangements are required regarding file maintenance or document retention, they must be agreed to in writing, and JAMS reserves the right to impose an additional fee for such special arrangements. Documents that are submitted for e-filing are retained for thirty (30) calendar days following the conclusion of the Arbitration.

(e) Unless the Parties' Agreement or applicable law provides otherwise, JAMS, if it determines that the Arbitrations so filed have common issues of fact or law, may consolidate Arbitrations in the following instances:

(i) If a Party files more than one Arbitration with JAMS, JAMS may consolidate the Arbitrations into a single Arbitration.

(ii) Where a Demand or Demands for Arbitration is or are submitted naming Parties already involved in another Arbitration or Arbitrations pending under these Rules, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators or panels of Arbitrators already appointed.

(iii) Where a Demand or Demands for Arbitration is or are submitted naming parties that are not identical to the Parties in the existing Arbitration or Arbitrations, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings

and referred to one of the Arbitrators or panels of Arbitrators already appointed.

When rendering its decision, JAMS will take into account all circumstances, including the links between the cases and the progress already made in the existing Arbitrations.

Unless applicable law provides otherwise, where JAMS decides to consolidate a proceeding into a pending Arbitration, the Parties to the consolidated case or cases will be deemed to have waived their right to designate an Arbitrator as well as any contractual provision with respect to the site of the Arbitration.

(f) Where a third party seeks to participate in an Arbitration already pending under these Rules or where a Party to an Arbitration under these Rules seeks to compel a third party to participate in a pending Arbitration, the Arbitrator shall determine such request, taking into account all circumstances he or she deems relevant and applicable.

## Rule 7. Number and Neutrality of Arbitrators; Appointment and Authority of Chairperson

(a) The Arbitration shall be conducted by one neutral Arbitrator, unless all Parties agree otherwise. In these Rules, the term "Arbitrator" shall mean, as the context requires, the Arbitrator or the panel of Arbitrators in a tripartite Arbitration.

(b) In cases involving more than one Arbitrator, the Parties shall agree on, or, in the absence of agreement, JAMS shall designate, the Chairperson of the Arbitration Panel. If the Parties and the Arbitrators agree, a single member of the Arbitration Panel may, acting alone, decide discovery and procedural matters, including the conduct of hearings to receive documents and testimony from third parties who have been subpoenaed to produce documents.

(c) Where the Parties have agreed that each Party is to name one Arbitrator, the Arbitrators so named shall be neutral and independent of the appointing Party, unless the Parties have agreed that they shall be non-neutral.

## Rule 8. Service

(a) The Arbitrator may at any time require electronic filing and service of documents in an Arbitration. If an Arbitrator requires electronic filing, the Parties shall maintain and regularly monitor a valid, usable and live email address for the receipt of all documents filed through JAMS Electronic Filing System. Any document filed electronically shall be considered as filed with JAMS when the transmission to JAMS Electronic Filing System is complete. Any document e-filed by 11:59 p.m. (of the sender's time zone) shall be deemed filed on that date. Upon completion of filing, JAMS Electronic Filing System shall issue a confirmation receipt that includes the date and time of receipt. The confirmation receipt shall serve as proof of filing.

(b) Every document filed with JAMS Electronic Filing System shall be deemed to have been signed by the Arbitrator, Case Manager, attorney or declarant who submits the document to JAMS Electronic Filing System, and shall bear the typed name, address and telephone number of a signing attorney. Documents containing signatures of third parties (i.e., unopposed motions, affidavits, stipulations, etc.) may also be filed electronically by indicating that the original signatures are maintained by the filing Party in paper format.

(c) Delivery of e-service documents through JAMS Electronic Filing System to other registered users shall be considered as valid and effective service and shall have the same legal effect as an original paper document. Recipients of e-service documents shall access their documents through JAMS Electronic Filing System. E-service shall be deemed complete when the Party initiating e-service completes the transmission of the electronic document(s) to JAMS Electronic Filing System for e-filing and/or e-service. Upon actual or constructive receipt of the electronic document(s) by the Party to be served, a Certificate of Electronic Service shall be issued by JAMS Electronic Filing System to the Party initiating e-service, and that Certificate shall serve as proof of service. Any Party who ignores or attempts to refuse e-service shall be deemed to have received the electronic document(s) 72 hours following the transmission of the electronic document(s) to JAMS Electronic Filing System.

(d) If an electronic filing or service does not occur because of (1) an error in the transmission of the document to JAMS Electronic Filing System or served Party which was unknown to the sending Party; (2) a failure to process the electronic document when received by JAMS Electronic Filing System; (3) the Party was erroneously excluded from the service list; or (4) other technical problems experienced by the filer, the Arbitrator or JAMS may, for good cause

shown, permit the document to be filed *nunc pro tunc* to the date it was first attempted to be sent electronically. Or, in the case of service, the Party shall, absent extraordinary circumstances, be entitled to an order extending the date for any response or the period within which any right, duty or other act must be performed.

(e) For documents that are not filed electronically, service by a Party under these Rules is effected by providing one signed copy of the document to each Party and two copies in the case of a sole Arbitrator and four copies in the case of a tripartite panel to JAMS. Service may be made by hand-delivery, overnight delivery service or U.S. mail. Service by any of these means is considered effective upon the date of deposit of the document.

(f) In computing any period of time prescribed or allowed by these Rules for a Party to do some act within a prescribed period after the service of a notice or other paper on the Party and the notice or paper is served on the Party only by U.S. mail, three (3) calendar days shall be added to the prescribed period.

## Rule 9. Notice of Claims

(a) Each Party shall afford all other Parties reasonable and timely notice of its claims, affirmative defenses or counterclaims. Any such notice shall include a short statement of its factual basis. No claim, remedy, counterclaim, or affirmative defense will be considered by the Arbitrator in the absence of such prior notice to the other Parties, unless the Arbitrator determines that no Party has been unfairly prejudiced by such lack of formal notice or all Parties agree that such consideration is appropriate notwithstanding the lack of prior notice.

(b) Claimant's notice of claims is the Demand for Arbitration referenced in Rule 5. It shall include a statement of the remedies sought. The Demand for Arbitration may attach and incorporate a copy of a Complaint previously filed with a court. In the latter case, Claimant may accompany the Complaint with a copy of any Answer to that Complaint filed by any Respondent.

(c) Within fourteen (14) calendar days of service of the notice of claim, a Respondent may submit to JAMS and serve on other Parties a response and a statement of any affirmative defenses, including jurisdictional challenges, or counterclaims it may have.

(d) Within fourteen (14) calendar days of service of a counterclaim, a Claimant may submit to JAMS and serve on other Parties a response to such counterclaim and any affirmative defenses, including jurisdictional challenges, it may have.

(e) Any claim or counterclaim to which no response has been served will be deemed denied.

(f) Jurisdictional challenges under Rule 11 shall be deemed waived, unless asserted in a response to a Demand or counterclaim or promptly thereafter, when circumstances first suggest an issue of arbitrability.

## Rule 10. Changes of Claims

After the filing of a claim and before the Arbitrator is appointed, any Party may make a new or different claim against a Party or any third Party that is subject to Arbitration in the proceeding. Such claim shall be made in writing, filed with JAMS and served on the other Parties. Any response to the new claim shall be made within fourteen (14) calendar days after service of such claim. After the Arbitrator is appointed, no new or different claim may be submitted, except with the Arbitrator's approval. A Party may request a hearing on this issue. Each Party has the right to respond to any new or amended claim in accordance with Rule 9(c) or (d).

## Rule 11. Interpretation of Rules and Jurisdictional Challenges

(a) Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final.

(b) Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(c) Disputes concerning the appointment of the Arbitrator shall be resolved by JAMS.

(d) The Arbitrator may, upon a showing of good cause or *sua sponte*, when necessary to facilitate the Arbitration, extend any deadlines established in these Rules, provided that the time for rendering the Award may only be altered in accordance with Rules 22(i) or 24.

## Rule 12. Representation

(a) The Parties, whether natural persons or legal entities such as corporations, LLCs, or partnerships, may be represented by counsel or any other person of the Party's choice. Each Party shall give prompt written notice to the Case Manager and the other Parties of the name, address, telephone and fax numbers and email address of its representative. The representative of a Party may act on the Party's behalf in complying with these Rules.

(b) Changes in Representation. A Party shall give prompt written notice to the Case Manager and the other Parties of any change in its representation, including the name, address, telephone and fax numbers and email address of the new representative. Such notice shall state that the written consent of the former representative, if any, and of the new representative, has been obtained and shall state the effective date of the new representation.

## Rule 13. Withdrawal from Arbitration

(a) No Party may terminate or withdraw from an Arbitration after the issuance of the Commencement Letter (see Rule 5), except by written agreement of all Parties to the Arbitration.

(b) A Party that asserts a claim or counterclaim may unilaterally withdraw that claim or counterclaim without prejudice by serving written notice on the other Parties and the Arbitrator. However, the opposing Parties may, within seven (7) calendar days of such notice, request that the Arbitrator condition the withdrawal upon such terms as he or she may direct.

## Rule 14. *Ex Parte* Communications

(a) No Party may have any *ex parte* communication with a neutral Arbitrator, except as provided in section (b) of this Rule. The Arbitrator(s) may authorize any Party to communicate directly with the Arbitrator(s) by email or other written means as long as copies are simultaneously forwarded to the JAMS Case Manager and the other Parties.

(b) A Party may have *ex parte* communication with its appointed neutral or non-neutral Arbitrator as necessary to secure the Arbitrator's services and to assure the absence of conflicts, as well as in connection with the selection of the Chairperson of the arbitral panel.

(c) The Parties may agree to permit more extensive *ex parte* communication between a Party and a non-neutral Arbitrator. More extensive communications with a non-neutral Arbitrator may also be permitted by applicable law and rules of ethics.

## Rule 15. Arbitrator Selection, Disclosures and Replacement

(a) Unless the Arbitrator has been previously selected by agreement of the Parties, JAMS may attempt to facilitate agreement among the Parties regarding selection of the Arbitrator.

(b) If the Parties do not agree on an Arbitrator, JAMS shall send the Parties a list of at least five (5) Arbitrator candidates in the case of a sole Arbitrator and ten (10) Arbitrator candidates in the case of a tripartite panel. JAMS shall also provide each Party with a brief description of the background and experience of each Arbitrator candidate. JAMS may replace any or all names on the list of Arbitrator candidates for reasonable cause at any time before the Parties have submitted their choice pursuant to subparagraph (c) below.

(c) Within seven (7) calendar days of service upon the Parties of the list of names, each Party may strike two (2) names in the case of a sole Arbitrator and three (3) names in the case of a tripartite panel, and shall rank the remaining Arbitrator candidates in order of preference. The remaining Arbitrator candidate with the highest composite ranking shall be appointed the Arbitrator. JAMS may grant a reasonable extension of the time to strike and rank the Arbitrator candidates to any Party without the consent of the other Parties.

(d) If this process does not yield an Arbitrator or a complete panel, JAMS shall designate the sole Arbitrator or as many members of the tripartite panel as are necessary to complete the panel.

(e) If a Party fails to respond to a list of Arbitrator candidates within seven (7) calendar days after its service, or fails to respond according to the instructions provided by JAMS, JAMS shall deem that Party to have accepted all of the Arbitrator candidates.

(f) Entities whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of the Arbitrator selection process. JAMS shall determine whether the interests between entities are adverse for purposes of Arbitrator selection, considering such factors as whether the entities are represented by

the same attorney and whether the entities are presenting joint or separate positions at the Arbitration.

(g) If, for any reason, the Arbitrator who is selected is unable to fulfill the Arbitrator's duties, a successor Arbitrator shall be chosen in accordance with this Rule. If a member of a panel of Arbitrators becomes unable to fulfill his or her duties after the beginning of a Hearing but before the issuance of an Award, a new Arbitrator will be chosen in accordance with this Rule, unless, in the case of a tripartite panel, the Parties agree to proceed with the remaining two Arbitrators. JAMS will make the final determination as to whether an Arbitrator is unable to fulfill his or her duties, and that decision shall be final.

(h) Any disclosures regarding the selected Arbitrator shall be made as required by law or within ten (10) calendar days from the date of appointment. Such disclosures may be provided in electronic format, provided that JAMS will produce a hard copy to any Party that requests it. The Parties and their representatives shall disclose to JAMS any circumstances likely to give rise to justifiable doubt as to the Arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the Arbitration or any past or present relationship with the Parties and their representatives. The obligation of the Arbitrator, the Parties and their representatives to make all required disclosures continues throughout the Arbitration process.

(i) At any time during the Arbitration process, a Party may challenge the continued service of an Arbitrator for cause. The challenge must be based upon information that was not available to the Parties at the time the Arbitrator was selected. A challenge for cause must be in writing and exchanged with opposing Parties, who may respond within seven (7) days of service of the challenge. JAMS shall make the final determination as to such challenge. Such determination shall take into account the materiality of the facts and any prejudice to the Parties. That decision will be final.

(j) Where the Parties have agreed that a Party-appointed Arbitrator is to be non-neutral, that Party-appointed Arbitrator is not obliged to withdraw if requested to do so only by the party who did not appoint that Arbitrator.

## Rule 16. Preliminary Conference

At the request of any Party or at the direction of the Arbitrator, a Preliminary Conference shall be conducted with the Parties or their counsel or representatives. The Preliminary Conference may address any or all of the following subjects:

(a) The exchange of information in accordance with Rule 17 or otherwise;

(b) The schedule for discovery as permitted by the Rules, as agreed by the Parties or as required or authorized by applicable law;

(c) The pleadings of the Parties and any agreement to clarify or narrow the issues or structure the Arbitration Hearing;

(d) The scheduling of the Hearing and any pre-Hearing exchanges of information, exhibits, motions or briefs;

(e) The attendance of witnesses as contemplated by Rule 21;

(f) The scheduling of any dispositive motion pursuant to Rule 18;

(g) The premarking of exhibits, preparation of joint exhibit lists and the resolution of the admissibility of exhibits;

(h) The form of the Award; and

(i) Such other matters as may be suggested by the Parties or the Arbitrator.

The Preliminary Conference may be conducted telephonically and may be resumed from time to time as warranted.

## Rule 17. Exchange of Information

(a) The Parties shall cooperate in good faith in the voluntary and informal exchange of all non-privileged documents and other information (including electronically stored information ("ESI")) relevant to the dispute or claim immediately after commencement of the Arbitration. They shall complete an initial exchange of all relevant, non-privileged documents, including, without limitation, copies of all documents in their possession or control on which they rely in support of their positions, names of individuals whom they may call as witnesses at the Arbitration

Hearing and names of all experts who may be called to testify at the Arbitration Hearing, together with each expert's report, which may be introduced at the Arbitration Hearing, within twenty-one (21) calendar days after all pleadings or notice of claims have been received. The Arbitrator may modify these obligations at the Preliminary Conference.

(b) Each Party may take at least one deposition of an opposing Party or an individual under the control of the opposing Party. The Parties shall attempt to agree on the number, time, location, and duration of the deposition(s). Absent agreement, the Arbitrator shall determine these issues, including whether to grant a request for additional depositions, based upon the reasonable need for the requested information, the availability of other discovery and the burdensomeness of the request on the opposing Parties and witness.

(c) As they become aware of new documents or information, including experts who may be called upon to testify, all Parties continue to be obligated to provide relevant, non-privileged documents, to supplement their identification of witnesses and experts and to honor any informal agreements or understandings between the Parties regarding documents or information to be exchanged. Documents that were not previously exchanged, or witnesses and experts that were not previously identified, may not be considered by the Arbitrator at the Hearing, unless agreed by the Parties or upon a showing of good cause.

(d) The Parties shall promptly notify JAMS when a dispute exists regarding discovery issues. A conference shall be arranged with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute. With the written consent of all Parties, and in accordance with an agreed written procedure, the Arbitrator may appoint a special master to assist in resolving a discovery dispute.

## Rule 18. Summary Disposition of a Claim or Issue

The Arbitrator may permit any Party to file a Motion for Summary Disposition of a particular claim or issue, either by agreement of all interested Parties or at the request of one Party, provided other interested Parties have reasonable notice to respond to the motion.

## Rule 19. Scheduling and Location of Hearing

(a) The Arbitrator, after consulting with the Parties that have appeared, shall determine the date, time and location of the Hearing. The Arbitrator and the Parties shall attempt to schedule consecutive Hearing days if more than one day is necessary.

(b) If a Party has failed to participate in the Arbitration process, and the Arbitrator reasonably believes that the Party will not participate in the Hearing, the Arbitrator may set the Hearing without consulting with that Party. The non-participating Party shall be served with a Notice of Hearing at least thirty (30) calendar days prior to the scheduled date, unless the law of the relevant jurisdiction allows for, or the Parties have agreed to, shorter notice.

(c) The Arbitrator, in order to hear a third-party witness, or for the convenience of the Parties or the witnesses, may conduct the Hearing at any location. Any JAMS Resolution Center may be designated a Hearing location for purposes of the issuance of a subpoena or subpoena *duces tecum* to a third-party witness.

## Rule 20. Pre-Hearing Submissions

(a) Except as set forth in any scheduling order that may be adopted, at least fourteen (14) calendar days before the Arbitration Hearing, the Parties shall file with JAMS and serve and exchange (1) a list of the witnesses they intend to call, including any experts; (2) a short description of the anticipated testimony of each such witness and an estimate of the length of the witness' direct testimony; and (3) a list of all exhibits intended to be used at the Hearing. The Parties should exchange with each other copies of any such exhibits to the extent that they have not been previously exchanged. The Parties should pre-mark exhibits and shall attempt to resolve any disputes regarding the admissibility of exhibits prior to the Hearing.

(b) The Arbitrator may require that each Party submit a concise written statement of position, including summaries of the facts and evidence a Party intends to present, discussion of the applicable law and the basis for the requested Award or denial of relief sought. The statements, which may be in the form of a letter, shall be filed with JAMS and served upon the other Parties at least seven (7) calendar days before the Hearing date. Rebuttal statements or other pre-Hearing written submissions may be permitted or required at the discretion of the Arbitrator.

## Rule 21. Securing Witnesses and Documents for the Arbitration Hearing

At the written request of a Party, all other Parties shall produce for the Arbitration Hearing all specified witnesses in their employ or under their control without need of subpoena. The Arbitrator may issue subpoenas for the attendance of witnesses or the production of documents either prior to or at the Hearing pursuant to this Rule or Rule 19(c). The subpoena or subpoena *duces tecum* shall be issued in accordance with the applicable law. Pre-issued subpoenas may be used in jurisdictions that permit them. In the event a Party or a subpoenaed person objects to the production of a witness or other evidence, the Party or subpoenaed person may file an objection with the Arbitrator, who shall promptly rule on the objection, weighing both the burden on the producing Party and witness and the need of the proponent for the witness or other evidence.

## Rule 22. The Arbitration Hearing

(a) The Arbitrator will ordinarily conduct the Arbitration Hearing in the manner set forth in these Rules. The Arbitrator may vary these procedures if it is determined to be reasonable and appropriate to do so. It is expected that the Employee will attend the Arbitration Hearing, as will any other individual party with information about a significant issue.

(b) The Arbitrator shall determine the order of proof, which will generally be similar to that of a court trial.

(c) The Arbitrator shall require witnesses to testify under oath if requested by any Party, or otherwise at the discretion of the Arbitrator.

(d) Strict conformity to the rules of evidence is not required, except that the Arbitrator shall apply applicable law relating to privileges and work product. The Arbitrator shall consider evidence that he or she finds relevant and material to the dispute, giving the evidence such weight as is appropriate. The Arbitrator may be guided in that determination by principles contained in the Federal Rules of Evidence or any other applicable rules of evidence. The Arbitrator may limit testimony to exclude evidence that would be immaterial or unduly repetitive, provided that all Parties are afforded the opportunity to present material and relevant evidence.

(e) The Arbitrator shall receive and consider relevant deposition testimony recorded by transcript or videotape, provided that the other Parties have had the opportunity to attend and cross-examine. The Arbitrator may in his or her discretion consider witness affidavits or other recorded testimony even if the other Parties have not had the opportunity to cross-examine, but will give that evidence only such weight as he or she deems appropriate.

(f) The Parties will not offer as evidence, and the Arbitrator shall neither admit into the record nor consider, prior settlement offers by the Parties or statements or recommendations made by a mediator or other person in connection with efforts to resolve the dispute being arbitrated, except to the extent that applicable law permits the admission of such evidence.

(g) The Hearing, or any portion thereof, may be conducted telephonically or videographically with the agreement of the Parties or at the discretion of the Arbitrator.

(h) When the Arbitrator determines that all relevant and material evidence and arguments have been presented, and any interim or partial Awards have been issued, the Arbitrator shall declare the Hearing closed. The Arbitrator may defer the closing of the Hearing until a date determined by the Arbitrator, to permit the Parties to submit post-Hearing briefs, which may be in the form of a letter, and/or to make closing arguments. If post-Hearing briefs are to be submitted, or closing arguments are to be made, the Hearing shall be deemed closed upon receipt by the Arbitrator of such briefs or at the conclusion of such closing arguments, whichever is later.

(i) At any time before the Award is rendered, the Arbitrator may, *sua sponte* or on application of a Party for good cause shown, reopen the Hearing. If the Hearing is reopened, the time to render the Award shall be calculated from the date the reopened Hearing is declared closed by the Arbitrator.

(j) The Arbitrator may proceed with the Hearing in the absence of a Party that, after receiving notice of the Hearing pursuant to Rule 19, fails to attend. The Arbitrator may not render an Award solely on the basis of the default or absence of the Party, but shall require any Party seeking relief to submit such evidence as the Arbitrator may require for the rendering of an Award. If the Arbitrator reasonably believes that a Party will not attend the Hearing, the Arbitrator may schedule the Hearing as a telephonic Hearing and may receive the evidence necessary to render an Award by affidavit. The notice of Hearing shall specify if it will be in person or telephonic.

(k) Any Party may arrange for a stenographic or other record to be made of the Hearing and shall inform the other Parties in advance of the Hearing.

(i) The requesting Party shall bear the cost of such stenographic record. If all other Parties agree to share the cost of the stenographic record, it shall be made available to the Arbitrator and may be used in the proceeding.

(ii) If there is no agreement to share the cost, the stenographic record may not be provided to the Arbitrator and may not be used in the proceeding, unless the Party arranging for the stenographic record agrees to provide access to the stenographic record either at no charge or on terms that are acceptable to the Parties and the reporting service.

(iii) If the Parties agree to the Optional Arbitration Appeal Procedure (see Rule 34), they shall, if possible, ensure that a stenographic or other record is made of the Hearing.

(iv) The Parties may agree that the cost of the stenographic record shall or shall not be allocated by the Arbitrator in the Award.

## Rule 23. Waiver of Hearing

The Parties may agree to waive the oral Hearing and submit the dispute to the Arbitrator for an Award based on written submissions and other evidence as the Parties may agree.

## Rule 24. Awards

(a) The Arbitrator shall render a Final Award or a Partial Final Award within thirty (30) calendar days after the date of the close of the Hearing, as defined in Rule 22(h) or (i), or, if a Hearing has been waived, within thirty (30) calendar days after the receipt by the Arbitrator of all materials specified by the Parties, except (1) by the agreement of the Parties; (2) upon good cause for an extension of time to render the Award; or (3) as provided in Rule 22(i). The Arbitrator shall provide the Final Award or the Partial Final Award to JAMS for issuance in accordance with this Rule.

(b) Where a panel of Arbitrators has heard the dispute, the decision and Award of a majority of the panel shall constitute the Arbitration Award.

(c) In determining the merits of the dispute, the Arbitrator shall be guided by the rules of law agreed upon by the Parties. In the absence of such agreement, the Arbitrator will be guided by the law or the rules of law that he or she deems to be most appropriate. The Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy.

(d) In addition to a Final Award or Partial Final Award, the Arbitrator may make other decisions, including interim or partial rulings, orders and Awards.

(e) Interim Measures. The Arbitrator may grant whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservation of property and disposition of disposable goods. Such interim measures may take the form of an interim or Partial Final Award, and the Arbitrator may require security for the costs of such measures. Any recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

(f) The Award of the Arbitrator may allocate Arbitration fees and Arbitrator compensation and expenses, unless such an allocation is expressly prohibited by the Parties' Agreement or by applicable law. (Such a prohibition may not limit the power of the Arbitrator to allocate Arbitration fees and Arbitrator compensation and expenses pursuant to Rule 31(c).)

(g) The Award of the Arbitrator may allocate attorneys' fees and expenses and interest (at such rate and from such date as the Arbitrator may deem appropriate) if provided by the Parties' Agreement or allowed by applicable law. When the Arbitrator is authorized to award attorneys' fees and must determine the reasonable amount of such fees,

he or she may consider whether the failure of a Party to cooperate reasonably in the discovery process and/or comply with the Arbitrator's discovery orders caused delay to the proceeding or additional costs to the other Parties.

(h) The Award shall consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. The Award shall also contain a concise written statement of the reasons for the Award, stating the essential findings and conclusions on which the Award is based. The Parties may agree to any other form of Award, unless the Arbitration is based on an arbitration agreement that is required as a condition of employment.

(i) After the Award has been rendered, and provided the Parties have complied with Rule 31, the Award shall be issued by serving copies on the Parties. Service may be made by U.S. mail. It need not be sent certified or registered.

(j) Within seven (7) calendar days after service of a Partial Final Award or Final Award by JAMS, any Party may serve upon the other Parties and on JAMS a request that the Arbitrator correct any computational, typographical or other similar error in an Award (including the reallocation of fees pursuant to Rule 31 or on account of the effect of an offer to allow judgment), or the Arbitrator may *sua sponte* propose to correct such errors in an Award. A Party opposing such correction shall have seven (7) calendar days thereafter in which to file any objection. The Arbitrator may make any necessary and appropriate corrections to the Award within twenty-one (21) calendar days of receiving a request or fourteen (14) calendar days after his or her proposal to do so. The Arbitrator may extend the time within which to make corrections upon good cause. The corrected Award shall be served upon the Parties in the same manner as the Award.

(k) The Award is considered final, for purposes of either the Optional Arbitration Appeal Procedure pursuant to Rule 34 or a judicial proceeding to enforce, modify or vacate the Award pursuant to Rule 25, fourteen (14) calendar days after service is deemed effective if no request for a correction is made, or as of the effective date of service of a corrected Award.

## Rule 25. Enforcement of the Award

Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1, *et seq.,* or applicable state law. The Parties to an Arbitration under these Rules shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof.

## Rule 26. Confidentiality and Privacy

(a) JAMS and the Arbitrator shall maintain the confidential nature of the Arbitration proceeding and the Award, including the Hearing, except as necessary in connection with a judicial challenge to or enforcement of an Award, or unless otherwise required by law or judicial decision.

(b) The Arbitrator may issue orders to protect the confidentiality of proprietary information, trade secrets or other sensitive information.

(c) Subject to the discretion of the Arbitrator or agreement of the Parties, any person having a direct interest in the Arbitration may attend the Arbitration Hearing. The Arbitrator may exclude any non-Party from any part of a Hearing.

## Rule 27. Waiver

(a) If a Party becomes aware of a violation of or failure to comply with these Rules and fails promptly to object in writing, the objection will be deemed waived, unless the Arbitrator determines that waiver will cause substantial injustice or hardship.

(b) If any Party becomes aware of information that could be the basis of a challenge for cause to the continued service of the Arbitrator, such challenge must be made promptly, in writing, to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service by the Arbitrator.

## Rule 28. Settlement and Consent Award

(a) The Parties may agree, at any stage of the Arbitration process, to submit the case to JAMS for mediation. The JAMS mediator assigned to the case may not be the Arbitrator or a member of the Appeal Panel, unless the Parties so agree, pursuant to Rule 28(b).

(b) The Parties may agree to seek the assistance of the Arbitrator in reaching settlement. By their written agreement to submit the matter to the Arbitrator for settlement assistance, the Parties will be deemed to have agreed that the assistance of the Arbitrator in such settlement efforts will not disqualify the Arbitrator from continuing to serve as Arbitrator if settlement is not reached; nor shall such assistance be argued to a reviewing court as the basis for vacating or modifying an Award.

(c) If, at any stage of the Arbitration process, all Parties agree upon a settlement of the issues in dispute and request the Arbitrator to embody the agreement in a Consent Award, the Arbitrator shall comply with such request, unless the Arbitrator believes the terms of the agreement are illegal or undermine the integrity of the Arbitration process. If the Arbitrator is concerned about the possible consequences of the proposed Consent Award, he or she shall inform the Parties of that concern and may request additional specific information from the Parties regarding the proposed Consent Award. The Arbitrator may refuse to enter the proposed Consent Award and may withdraw from the case.

## Rule 29. Sanctions

The Arbitrator may order appropriate sanctions for failure of a Party to comply with its obligations under any of these Rules or with an order of the Arbitrator. These sanctions may include, but are not limited to, assessment of Arbitration fees and Arbitrator compensation and expenses; any other costs occasioned by the actionable conduct, including reasonable attorneys' fees; exclusion of certain evidence; drawing adverse inferences; or, in extreme cases, determining an issue or issues submitted to Arbitration adversely to the Party that has failed to comply.

## Rule 30. Disqualification of the Arbitrator as a Witness or Party and Exclusion of Liability

(a) The Parties may not call the Arbitrator, the Case Manager or any other JAMS employee or agent as a witness or as an expert in any pending or subsequent litigation or other proceeding involving the Parties and relating to the dispute that is the subject of the Arbitration. The Arbitrator, Case Manager and other JAMS employees and agents are also incompetent to testify as witnesses or experts in any such proceeding.

(b) The Parties shall defend and/or pay the cost (including any attorneys' fees) of defending the Arbitrator, Case Manager and/or JAMS from any subpoenas from outside parties arising from the Arbitration.

(c) The Parties agree that neither the Arbitrator, nor the Case Manager, nor JAMS is a necessary Party in any litigation or other proceeding relating to the Arbitration or the subject matter of the Arbitration, and neither the Arbitrator, nor the Case Manager, nor JAMS, including its employees or agents, shall be liable to any Party for any act or omission in connection with any Arbitration conducted under these Rules, including, but not limited to, any disqualification of or recusal by the Arbitrator.

## Rule 31. Fees

(a) Except as provided in paragraph (c) below, unless the Parties have agreed to a different allocation, each Party shall pay its *pro rata* share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration. To the extent possible, the allocation of such fees and expenses shall not be disclosed to the Arbitrator. JAMS' agreement to render services is jointly with the Party and the attorney or other representative of the Party in the Arbitration. The non-payment of fees may result in an administrative suspension of the case in accordance with Rule 6(c).

(b) JAMS requires that the Parties deposit the fees and expenses for the Arbitration from time to time during the course of the proceedings and prior to the Hearing. The Arbitrator may preclude a Party that has failed to deposit its *pro rata* or agreed-upon share of the fees and expenses from offering evidence of any affirmative claim at the Hearing.

(c) If an Arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an employee may be required to pay is the initial JAMS Case Management Fee. JAMS does not preclude an employee from contributing to administrative and Arbitrator fees and expenses. If an Arbitration is not based on a clause or agreement that is required as a condition of employment, the Parties are jointly and severally liable for

the payment of JAMS' Arbitration fees and Arbitrator compensation and expenses. In the event that one Party has paid more than its share of such fees, compensation and expenses, the Arbitrator may award against any other Party any such fees, compensation and expenses that such Party owes with respect to the Arbitration.

(d) Entities whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of JAMS' assessment of fees. JAMS shall determine whether the interests between entities are adverse for purpose of fees, considering such factors as whether the entities are represented by the same attorney and whether the entities are presenting joint or separate positions at the Arbitration.

## Rule 32. Bracketed (or High-Low) Arbitration Option

(a) At any time before the issuance of the Arbitration Award, the Parties may agree, in writing, on minimum and maximum amounts of damages that may be awarded on each claim or on all claims in the aggregate. The Parties shall promptly notify JAMS and provide to JAMS a copy of their written agreement setting forth the agreed-upon minimum and maximum amounts.

(b) JAMS shall not inform the Arbitrator of the agreement to proceed with this option or of the agreed-upon minimum and maximum levels without the consent of the Parties.

(c) The Arbitrator shall render the Award in accordance with Rule 24.

(d) In the event that the Award of the Arbitrator is between the agreed-upon minimum and maximum amounts, the Award shall become final as is. In the event that the Award is below the agreed-upon minimum amount, the final Award issued shall be corrected to reflect the agreed-upon minimum amount. In the event that the Award is above the agreed-upon maximum amount, the final Award issued shall be corrected to reflect the agreed-upon maximum amount.

## Rule 33. Final Offer (or Baseball) Arbitration Option

(a) Upon agreement of the Parties to use the option set forth in this Rule, at least seven (7) calendar days before the Arbitration Hearing, the Parties shall exchange and provide to JAMS written proposals for the amount of money damages they would offer or demand, as applicable, and that they believe to be appropriate based on the standard set forth in Rule 24(c). JAMS shall promptly provide copies of the Parties' proposals to the Arbitrator, unless the Parties agree that they should not be provided to the Arbitrator. At any time prior to the close of the Arbitration Hearing, the Parties may exchange revised written proposals or demands, which shall supersede all prior proposals. The revised written proposals shall be provided to JAMS, which shall promptly provide them to the Arbitrator, unless the Parties agree otherwise.

(b) If the Arbitrator has been informed of the written proposals, in rendering the Award, the Arbitrator shall choose between the Parties' last proposals, selecting the proposal that the Arbitrator finds most reasonable and appropriate in light of the standard set forth in Rule 24(c). This provision modifies Rule 24(h) in that no written statement of reasons shall accompany the Award.

(c) If the Arbitrator has not been informed of the written proposals, the Arbitrator shall render the Award as if pursuant to Rule 24, except that the Award shall thereafter be corrected to conform to the closest of the last proposals and the closest of the last proposals will become the Award.

(d) Other than as provided herein, the provisions of Rule 24 shall be applicable.

## Rule 34. Optional Arbitration Appeal Procedure

The Parties may agree at any time to the JAMS Optional Arbitration Appeal Procedure. All Parties must agree in writing for such procedures to be effective. Once a Party has agreed to the Optional Arbitration Appeal Procedure, it cannot unilaterally withdraw from it, unless it withdraws, pursuant to Rule 13, from the Arbitration.

## Local Solutions. Global Reach. TM

JAMS successfully resolves business and legal disputes by providing efficient, cost-effective and impartial ways of overcoming barriers at any stage of conflict. JAMS offers customized dispute resolution services locally and globally through a combination of industry-specific experience, first-class client service, top-notch facilities and highly trained panelists.

## Employment Rules & Procedures

- Complete List of Rules & Procedures ›
- Employment Clauses ›

## JAMS Employment Practice Group

- Employment Practice Brochure (PDF) ›

# Español

**ACUERDO MUTUO PARA RESOLVER RECLAMACIONES MEDIANTE ARBITRAJE**

Este Acuerdo Mutuo para Resolver Reclamaciones mediante Arbitraje ("Acuerdo") se celebra entre Aldi Inc. (junto con sus supervisores, empleados, agentes, miembros, directores, funcionarios, socios, accionistas y cualquier empresa matriz, subsidiaria, afiliada o sucesora) ("Empresa") y el empleado abajo firmante (junto con sus herederos, sucesores y cesionarios) ("Empleado"). La aceptación o continuación del empleo con la Empresa se considerará como la aceptación del presente Acuerdo. No obstante, este Acuerdo no constituye una promesa de que el empleo continuará durante un período de tiempo determinado o finalizará solo en ciertas condiciones. El empleo en la Empresa se trata de una relación voluntaria (a voluntad) que existe sin contar con un período de tiempo definido, y el presente Acuerdo no cambia dicha relación.

**Reclamaciones que cubre este Acuerdo**

La Empresa y el Empleado están de acuerdo en que cualquier reclamación o controversia legales ("Reclamaciones") que estén relacionadas con el empleo y que el Empleado pueda interponer contra la Empresa, o que la Empresa pueda interponer contra el Empleado, debe resolverse mediante arbitraje en lugar de realizarse en los tribunales, y las partes renuncian mutuamente a su derecho a un juicio ante un juez o jurado en un tribunal federal o estatal a favor del arbitraje de conformidad con el presente Acuerdo. Este Acuerdo pretende ser tanto retrospectivo como prospectivo, y las Reclamaciones tienen por objeto incluir reclamaciones pasadas, presentes y futuras, junto con aquellas que puedan haberse originado o acumulado antes de firmarse el presente Acuerdo. Entre las reclamaciones se enumeran, sin que haya que limitarse a ellas, las reclamaciones de salarios y horas u otras indemnizaciones debidas; la divulgación de secretos comerciales; las reclamaciones por incumplimiento de algún contrato o convenio (expreso o implícito); las reclamaciones por responsabilidad extracontractual; las reclamaciones por acoso o discriminación (entre las que se incluyen por raza, sexo, religión, origen nacional, edad, estado civil, estado de salud, discapacidad u otra característica protegida de conformidad con la ley de discriminación aplicable); las reclamaciones por prestaciones que no sean las presentadas en virtud de la Ley de Garantía de Ingresos por Jubilación del Empleado ("ERISA"); y las reclamaciones por incumplimiento de alguna ley gubernamental, estatuto, regulación, ordenanza o derecho consuetudinario federal, estatal o de otro tipo. Entre estas se incluyen las reclamaciones conformes a la Ley Contra la Discriminación en el Empleo por Razón de Edad, Título VII de la Ley de Derechos Civiles de 1964, la Ley de Estadounidenses con Discapacidades, la Ley de Permiso Médico y Familiar, la Ley de Normas Justas de Trabajo, el Código Laboral de California, y todas las leyes equiparables.

**Reclamaciones que no cubre este Acuerdo**

Este Acuerdo no impide que el Empleado presente una reclamación o cargo ante un organismo administrativo gubernamental, como el Consejo Nacional de Relaciones Laborales (NLRB), el Departamento de Trabajo o la Comisión para la Igualdad de Oportunidades en el Empleo. El presente Acuerdo no cubre las reclamaciones por prestaciones de indemnización laboral o por desempleo. Estas reclamaciones las seguirá presentando el Empleado ante el organismo administrativo estatal correspondiente. Asimismo, el presente Acuerdo no cubre las reclamaciones relacionadas con los conflictos y planes de prestaciones de ERISA de ningún convenio colectivo aplicable ni los cargos presentados ante el Consejo Nacional de Relaciones Laborales. Además, este Acuerdo no impide que el Empleado o la Empresa soliciten medidas cautelares en un tribunal de acuerdo con la ley aplicable. No obstante, después de que el Tribunal emita una resolución con respecto a la medida cautelar, el Empleado y la Empresa están obligados a someter la controversia a arbitraje en virtud del presente Acuerdo.

Este Acuerdo no se aplicará a ninguna reclamación que no se pueda arbitrar jurídicamente. Si la Empresa o el Empleado plantean solicitar reclamaciones sujetas al presente Acuerdo y reclamaciones que están excluidas de este, las reclamaciones conformes al Acuerdo se deberán arbitrar y las que no se deberán presentar ante el tribunal. Las reclamaciones sujetas al presente Acuerdo no se unirán, en ningún caso, a las que estén excluidas y que se presenten ante los tribunales, a menos que la Empresa y el Empleado estén de acuerdo.

**Renuncia de las Reclamaciones de Clase, Colectivas y Representativas**

La Empresa y el Empleado están de acuerdo en que las Reclamaciones solo las puede presentar la parte a título individual, y no como demandante o miembro de la clase en cualquier procedimiento de clase, colectivo o representativo. Ninguna de las partes podrá presentar una reclamación en nombre de otras personas, salvo si la ley no permite la renuncia a las reclamaciones representativas. El Empleado que trabaje en el Estado de California puede presentar una reclamación de conformidad a la Ley General de Abogados Privados de California de 2004 ante un tribunal competente para la recuperación del pago de las sanciones civiles que se haya abonado, en su totalidad o en parte, ante la Agencia del Desarrollo de la Fuerza Laboral de California (LWDA).

**Aviso de Reclamación y Derecho a ser Representado**

La parte que desee presentar una reclamación debe avisar por escrito a la otra parte dentro del plazo legal establecido por la ley federal, estatal o local correspondiente. El aviso por escrito deberá identificar y describir la naturaleza de todas las reclamaciones declaradas y un resumen de los hechos en los que se basen dichas reclamaciones. Si el Empleado es la parte que presenta la Reclamación, este deberá enviar el aviso a Aldi Inc., 1200 N. Kirk Road, Batavia, Illinois 60510. Si la Empresa es la parte que presenta la Reclamación, esta deberá enviar el aviso a la dirección más reciente del Empleado que aparezca en su archivo personal.

**Procedimientos de Arbitraje**

Las reclamaciones se resolverán mediante un arbitraje vinculante que administrará JAMS según las Reglas y Procedimientos de Arbitraje Laboral ("Reglas JAMS") vigentes en ese momento, salvo que se modifique de otra manera en el presente documento. Se puede consultar la versión actual de las Reglas JAMS en https://www.jamsadr.com/rules-employment-arbitration/english (versión en inglés), o en https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS-Spanish-Employment-Rules-2014.pdf (versión en español), o se puede solicitar a la Empresa. Primarán las disposiciones del presente Acuerdo en la medida en que exista algún conflicto entre este programa y las Reglas JAMS, salvo según lo dispuesto por la ley aplicable. Los arbitrajes se llevarán a cabo en (o cerca de) la ciudad en la que el Empleado viva o en la que haya trabajado para la Empresa, a menos que las partes acuerden lo contrario.

El árbitro será neutral y lo seleccionarán las partes por mutuo acuerdo. Si las partes no pueden llegar a un acuerdo, JAMS enviará a las partes una lista de nueve (9) posibles árbitros. De esa lista, las partes tendrán la oportunidad de tachar hasta tres nombres y "ordenar" su preferencia por los nombres restantes, y JAMS seleccionará el árbitro que mejor hayan clasificado ambas partes y que no hayan tachado ninguna de las partes.

El descubrimiento se regirá en base a las Reglas JAMS aplicables, junto con el intercambio de información pertinente antes de celebrar la audiencia de arbitraje. Ambas partes tendrán el derecho de presentar pruebas, mediante testimonios y pruebas documentales, y de interrogar a los testigos.

Si el Empleado presenta una solicitud de arbitraje, deberá pagar la tasa de tramitación del caso que cobra JAMS o el equivalente de la tasa de tramitación en el caso de que el Empleado hubiera presentado una queja ante el tribunal estatal, lo que sea menos. El Empleado no tendrá que pagar ninguna tasa de tramitación de caso si al hacerlo invalida el presente Acuerdo según la ley aplicable. La Empresa pagará todos los gastos exclusivos del arbitraje, incluidos los gastos y honorarios del árbitro. Cada parte pagará sus propios gastos, honorarios de abogados y gastos de descubrimiento (como las declaraciones testimoniales), si corresponde. No obstante, si alguna de las partes gana en una causa legal que costea los gastos u honorarios de los abogados de la parte ganadora, o si hay un acuerdo por escrito que establezca los gastos u honorarios, el árbitro podrá adjudicar unos gastos y honorarios razonables a la parte ganadora, de conformidad con dicha ley o acuerdo, o de otra forma que permita la ley aplicable.

**Autoridad del Árbitro**

El árbitro no puede (1) juntar más de una reclamación o reclamaciones de un particular en un solo caso, (2) participar o facilitar el aviso de otras posibles reclamaciones, o (3) arbitrar o dirigir cualquier tipo de procedimiento representativo, colectivo o de clase.

La autoridad del árbitro se limitará a decidir el caso que hayan tramitado las partes para su arbitraje. Por ello, ninguna decisión del árbitro deberá sentar un precedente en otros arbitrajes, salvo en el caso de impedir que se vuelva a arbitrar la misma reclamación entre las mismas partes.

El árbitro aplicará la ley vigente en las Reclamaciones declaradas. El árbitro no podrá cometer errores de Derecho o de razonamiento jurídico, y se puede revocar la resolución o corregirse en la apelación ante un tribunal competente por cualquier error de este tipo.

Si alguna de las partes infringe el presente Acuerdo al iniciar una acción de reclamación en un tribunal de justicia, el tribunal (y no un árbitro) tendrá la competencia de resolver cualquier disputa relacionada con la interpretación, formación, existencia, exigibilidad, validez y alcance del presente Acuerdo, que incluye la Renuncia de las Reclamaciones de Clase, Colectivas y Representativas. No obstante, si una parte cumple con el presente Acuerdo y presenta una solicitud de arbitraje sin formalizar una queja ante un tribunal de justicia, el árbitro tendrá la competencia de resolver cualquier disputa relacionada con la interpretación de este Acuerdo con fines de descubrimiento o de los fundamentos de la reclamación subyacente, pero no contará con la autoridad para resolver ninguna disputa relacionada con la formación, existencia, exigibilidad o validez del presente Acuerdo, que incluye la Renuncia de las Reclamaciones de Clase, Colectivas y Representativas.

**Adjudicaciones por Escrito**

El árbitro entregará a las partes una declaración por escrito sobre la disposición de cada reclamación y prestación, si la hubiere, que se haya adjudicado inmediatamente después del procedimiento. El árbitro también brindará una declaración por escrito de los motivos de cada adjudicación, indicando los resultados y conclusiones fundamentales en los que se basa. El árbitro tendrá la competencia de otorgar, con arreglo a la ley o a la equidad, cualquier prestación adecuada que esté disponible según la ley aplicable en un procedimiento judicial. El árbitro no tendrá autoridad para extender, modificar o suspender ninguna de las disposiciones del presente Acuerdo, a menos que alguna disposición entre en conflicto con la ley vigente. El arbitraje será definitivo y vinculante para las partes. Toda revisión judicial de un laudo arbitral por escrito, junto con cualquier solicitud para confirmar una adjudicación, depende de la ley aplicable.

**Validez del Acuerdo**

Si alguna disposición del presente Acuerdo es nula o no aplicable, tanto en su totalidad como en parte, las disposiciones restantes seguirán siendo válidas y cualquier disposición no aplicable o contraria se eliminará de forma automática. Sin embargo, si se determina que la Renuncia de las Reclamaciones de Clase, Colectivas y Representativas no es aplicable, cualquier reclamación interpuesta en base a una acción de clase, colectiva o representativa debe presentarse ante el tribunal competente, y dicho tribunal deberá servir de foro exclusivo para dichas reclamaciones. La Empresa se dedica al comercio interestatal, por lo que la interpretación y cumplimiento del presente Acuerdo se regirán por la Ley Federal de Arbitraje. Las solicitudes basadas en exigir un arbitraje o en modificar, confirmar o anular alguna adjudicación se pueden presentar ante cualquier tribunal competente, ya sea de conformidad con la Ley Federal de Arbitraje o la ley estatal aplicable. No obstante, las partes están de acuerdo en que no se aplicará el Código de Procedimiento Civil de California, artículo 1281.2 (c). El presente acuerdo establece un contrato completo entre las partes y reemplaza en su totalidad a todos y cada uno de los acuerdos o tratos anteriores, tanto por vía oral como por escrito, entre las partes relacionadas con el asunto del presente documento.

**Contraprestación**

Los compromisos mutuos entre el Empleado y la Empresa de arbitrar Reclamaciones, en lugar de presentarlas ante los tribunales u otros organismos, se aceptarán como contraprestación. Ningún incumplimiento del presente Acuerdo por parte del Empleado o de la Empresa se considerará como una renuncia al derecho de cumplir con este Acuerdo en el futuro.

Si tengo alguna duda relacionada con el Acuerdo Mutuo para Resolver Reclamaciones mediante Arbitraje o deseo recibir una copia de las Reglas y Procedimientos de Arbitraje Laboral JAMS, debo ponerme en contacto con el equipo legal en legal@aldi.us.

Electronically Signed By
Richard Anthony Erwin 4/9/2020

Timothy S Falagan AI California LLC 3/26/2020

# Reglas y Procedimientos de Arbitraje Laboral de JAMS

*Vigentes a partir del 1 de julio de 2014*

JAMS®

# REGLAS Y PROCEDIMIENTOS DE ARBITRAJE LABORAL DE JAMS

JAMS proporciona servicios de Arbitraje y mediación en todo el mundo. Resolvemos algunas de las disputas más grandes, complejas y contenciosas del mundo, utilizando las Reglas y Procedimientos de JAMS al igual que las Reglas de otras instituciones de Arbitraje nacionales e internacionales.

Los Árbitros y mediadores de JAMS son neutrales a tiempo completo que provienen de las filas de jueces estatales y federales jubilados y abogados prominentes. Estos profesionales de la Resolución Alternativa de Conflictos (RAC) altamente capacitados y experimentados están dedicados a los más altos estándares éticos de conducta.

Las partes que deseen redactar en su acuerdo una cláusula de Arbitraje de JAMS previa a la disputa deberían revisar las cláusulas modelo para Arbitraje que se encuentran en la página 4. Estas cláusulas pueden ser modificadas para ajustarse al proceso de Arbitraje a fin de satisfacer las necesidades individuales de las partes.

JAMS®

# Índice

Tarifas Administrativas . . . . . . . . . . . . . . . . . . . . . . . 3

## Cláusulas Modelo para utilizar en los Programas y Contratos de Resolución de Disputas Laborales

Cláusula Modelo únicamente para Mediación . . . . . . 4
Cláusula Modelo para la Mediación y el Arbitraje . . . . 4

## Reglas y Procedimientos de Arbitraje Laboral de JAMS

Regla 1. Alcance de las Reglas . . . . . . . . . . . . . . . 5
Regla 2. Autodeterminación de las Partes . . . . . . . . 6
Regla 3. Modificación de las Reglas . . . . . . . . . . . . 6
Regla 4. Conflicto con la Ley . . . . . . . . . . . . . . . . . 6
Regla 5. Inicio del Arbitraje . . . . . . . . . . . . . . . . . . 6
Regla 6. Asuntos Preliminares y Administrativos . . . 7
Regla 7. Cantidad y Neutralidad de los Árbitros; Nombramiento y Autoridad del Presidente . 9
Regla 8. Notificación . . . . . . . . . . . . . . . . . . . . . . 9
Regla 9. Aviso de Reclamaciones . . . . . . . . . . . . . 11
Regla 10. Cambios de las Reclamaciones . . . . . . . . 12
Regla 11. Interpretación de las Reglas y las Impugnaciones Jurisdiccionales . . . . . . . 12
Regla 12. Representación . . . . . . . . . . . . . . . . . . . 13
Regla 13. Retiro del Arbitraje . . . . . . . . . . . . . . . . 13
Regla 14. Comunicaciones *Ex Parte* . . . . . . . . . . . . 13
Regla 15. Selección, Divulgaciones y Reemplazo del Árbitro . . . . . . . . . . . . . . 14
Regla 16. Conferencia Preliminar . . . . . . . . . . . . . . 16
Regla 17. Intercambio de Información . . . . . . . . . . 16
Regla 18. Testimonio Sumario de una Reclamación o Cuestión . . . . . . . . . . . . . 17
Regla 19. Planificación y Ubicación de la Audiencia 18
Regla 20. Presentaciones Previas a la Audiencia . . . 18
Regla 21. Obtención de Testigos y Documentos para la Audiencia de Arbitraje . . . . . . . . . 19
Regla 22. La Audiencia de Arbitraje . . . . . . . . . . . . 19
Regla 23. Renuncia a la Audiencia . . . . . . . . . . . . 21

Regla 24. Laudos . . . . . . . . . . . . . . . . . . . . . . . . . 21
Regla 25. Ejecución del Laudo . . . . . . . . . . . . . . . 23
Regla 26. Confidencialidad y Privacidad . . . . . . . . . 23
Regla 27. Exención o Renuncia . . . . . . . . . . . . . . . 24
Regla 28. Laudo de Conciliación y Consentimiento . 24
Regla 29. Sanciones. . . . . . . . . . . . . . . . . . . . . . . 25
Regla 30. Descalificación del Árbitro como un Testigo o una de las Partes y Exclusión de Responsabilidad. . . . . . . . . 25
Regla 31. Honorarios . . . . . . . . . . . . . . . . . . . . . . 26
Regla 32. Opción de Arbitraje con Límites (bracketed) (o máximo/mínimo) . . . . . . . 27
Regla 33. Opción de Arbitraje de Oferta Definitiva (o de béisbol) . . . . . . . . . . . . . . . . . . . . 27
Regla 34. Procedimiento Opcional para la Apelación del Arbitraje. . . . . . . . . . . . . . 28

## Tarifas Administrativas

Tarifas Administrativas Para asuntos de dos Partes, JAMS cobra una Tarifa Inicial de $1,500, que deberá ser pagada por la Parte que inicie el Arbitraje. JAMS también cobrará una tarifa de $1,500.00 por la presentación de una contrademanda o reconvención. Para asuntos de tres Partes o más, la Tarifa Inicial será de $2,000. Se cobrará una Tarifa Administrativa del 12% sobre todas las Tarifas Profesionales, incluyendo el tiempo invertido en audiencias, lecturas previas y posteriores a la audiencia e investigación y preparación del Laudo.

Los neutrales de JAMS fijan sus propias tarifas por hora, por día parcial o por día total. Para información sobre las tarifas de neutrales en lo individual y las tarifas administrativas, favor de contactar a JAMS al 800-352-5267, en Los Estados Unidos, y al 212-607-2771 si llama del exterior. La estructura de tarifas está sujeta a cambios.

# Cláusulas Modelo para Utilizar en los Programas y Contratos de Resolución de Disputas Laborales

Las siguientes son cláusulas modelo básicas que estipulan la mediación o el Arbitraje de un contrato laboral. Una variedad de cuestiones pueden afectar la exigibilidad o eficacia de estas cláusulas modelo, por lo tanto se recomienda que revise las leyes correspondientes de su jurisdicción y consulte con abogados experimentados para obtener asesoramiento. La información contenida en el presente documento no debe interpretarse como un asesoramiento u opinión legal. Para obtener más información acerca de cómo establecer un caso, comuníquese con su oficina local de JAMS al 1-800-352-5267.

## Cláusula Modelo Únicamente para Mediación

*Cualquier controversia, disputa o reclamación que surja de o se relacione con este [contrato] o con el incumplimiento de sus cláusulas deberá resolverse primero mediante una negociación de buena fe [O un programa laboral de la compañía] [otro]. Si la disputa no puede resolverse mediante una negociación [O un programa laboral de la compañía] [otro], las partes acuerdan intentar resolver de buena fe la disputa a través de una mediación administrada por JAMS.*

## Cláusula Modelo para la Mediación y el Arbitraje

*Cualquier controversia, disputa o reclamación que surja de o se relacione con este [contrato] o con el incumplimiento de sus cláusulas deberá resolverse primero mediante una negociación de buena fe [O un programa laboral de la compañía] [otro]. Si la disputa no puede resolverse mediante una negociación [O un programa laboral de la compañía] [otro], las partes acuerdan intentar resolver de buena fe la disputa a través de una mediación administrada por JAMS. Si las partes no tienen éxito al resolver la disputa a través de la mediación, las Partes aceptan un Arbitraje [vinculante] administrado por JAMS de conformidad con sus Reglas y Procedimientos Para el Arbitraje Laboral y sujeto a la Política de JAMS sobre los Estándares Mínimos de Imparcialidad Procesal Para el Arbitraje Laboral. La sentencia de un Laudo podrá ser presentada ante cualquier tribunal que cuente con jurisdicción.*

En el sitio web de JAMS, **www.jamsadr.com/rules-clauses**, puede acceder a todas las Reglas de JAMS, incluidas las Reglas de Arbitraje Laboral que se exponen a continuación.

# REGLAS Y PROCEDIMIENTOS DEL ARBITRAJE LABORAL DE JAMS

*AVISO: Estas Reglas constituyen la propiedad con derechos reservados de JAMS. Las mismas no pueden ser copiadas, reimpresas o utilizadas de ninguna forma sin el permiso de JAMS, salvo que sean utilizadas por las partes de un arbitraje en carácter de las reglas de ese arbitraje. Si las mismas son utilizadas en carácter de reglas de un arbitraje, se debe mencionar a JAMS como la fuente apropiada. Si desea obtener permiso para utilizar nuestros materiales con derechos reservados, contáctese con JAMS al 949-224-1810.*

## Regla 1. Alcance de las Reglas

(a) Las Reglas y Procedimientos de Arbitraje Laboral de JAMS ("Reglas") rigen los Arbitrajes vinculantes de las disputas o reclamaciones que son administradas por JAMS y en las que las Partes acuerdan utilizar estas Reglas o bien, en ausencia de dicho acuerdo, las reclamaciones o disputas están relacionadas con el trabajo, salvo que se prescriban otras Reglas.

(b) Se considerará que las Partes han incorporado estas Reglas como parte de su acuerdo de Arbitraje ("Acuerdo") cuando hayan dispuesto el Arbitraje de JAMS en virtud de sus Reglas laborales o el Arbitraje por parte de JAMS sin especificar ninguna Regla de JAMS en particular y que las reclamaciones o disputas cumplan con el criterio del primer párrafo de esta Regla.

(c) La autoridad y las obligaciones de JAMS como se prescriben en el Acuerdo de las Partes y en estas Reglas serán cumplidas por la Comisión Nacional de Arbitraje (National Arbitration Committee, "NAC") o la oficina del Director Jurídico de JAMS o las personas que este designe.

(d) JAMS podrá, a su discreción, asignar la administración de un Arbitraje a cualquiera de sus Centros de Resolución.

(e) El término "Parte" tal como se utiliza en estas Reglas incluye a las Partes del Arbitraje y a sus abogados o representantes.

(f) "Presentación electrónica" (e-file) se refiere a la transmisión electrónica de documentos hacia y desde JAMS y otras Partes a los efectos de realizar una presentación a través de Internet. "Servicio electrónico" (e-service) se refiere a la transmisión electrónica de documentos a través del Sistema de Presentación Electrónica de JAMS hacia una parte, abogado o representante en virtud de estas Reglas.

## Regla 2. Autodeterminación de las Partes

(a) Las Partes pueden acordar cualquier procedimiento que no esté especificado en el presente documento o en lugar de estas Reglas que sea congruente con la ley y las políticas de JAMS correspondientes (incluidas, entre otras, la política de JAMS sobre los Estándares Mínimos de Imparcialidad Procesal para el Arbitraje Laboral, y las Reglas 15(i), 30 y 31). Las Partes deberán notificar rápidamente a JAMS cualquier procedimiento acordado por las Partes y confirmar dichos procedimientos por escrito. Los procedimientos acordados por las Partes serán exigibles como si estuvieran contenidos en estas Reglas.

(b) Cuando un Acuerdo de Arbitraje establezca que el Arbitraje será administrado o no por otra entidad que no sea JAMS y/o llevado a cabo de acuerdo con normas distintas de las Reglas de JAMS, las Partes podrán acordar posteriormente modificar dicho Acuerdo para disponer que el Arbitraje sea administrado por JAMS y/o llevado a cabo conforme a las Reglas JAMS.

## Regla 3. Modificación de las Reglas

JAMS puede modificar estas Reglas sin previo aviso. Las Reglas vigentes en la fecha del inicio de un Arbitraje (según lo definido en la Regla 5) aplicarán a ese Arbitraje, salvo que las Partes hayan acordado otra versión de las Reglas.

## Regla 4. Conflicto con la Ley

Si se determina que cualquiera de estas Reglas, o su modificación acordada por las Partes, está en conflicto con una disposición legal aplicable, la norma legal regirá sobre la Regla en conflicto, y ninguna otra Regla se verá afectada.

## Regla 5. Inicio del Arbitraje

(a) Se considera que el Arbitraje se inicia cuando JAMS emite una Carta de Inicio basándose en la existencia de algunas de las condiciones siguientes:

(i) Un Acuerdo de Arbitraje posterior a la disputa completamente formalizado por todas las Partes donde se especifique la administración de JAMS o el uso de cualquiera de las Reglas de JAMS; o

(ii) Una disposición contractual por escrito previa a la disputa que requiera que las Partes sometan a arbitraje la disputa o reclamación laboral y que especifique la administración de JAMS o el uso de cualquiera de las Reglas de JAMS o que las Partes acuerdan que sea administrado por JAMS; o

(iii) Una confirmación escrita de un acuerdo verbal de todas las partes para participar en un arbitraje administrado por JAMS o llevado a cabo de conformidad con cualquiera de las Reglas de JAMS; o bien

(iii) La falta de objeción oportuna por parte del Demandado a la administración de JAMS; o

(iv) Una copia de la orden judicial que obligue al Arbitraje en JAMS.

(b) La Carta de Inicio confirma que se cumplieron los requisitos para el inicio, que JAMS recibió todos los pagos requeridos en virtud del listado de honorarios correspondiente, y que el Reclamante proporcionó a JAMS la información de contacto de todas las Partes junto con evidencia de que la Demanda ha sido notificada a todas las Partes.

(c) Si una de las Partes que está obligada a someterse a Arbitraje conforme a el subpárrafo (a) de esta Regla no conviene en participar en el proceso de Arbitraje, JAMS deberá confirmar por escrito la falta de respuesta o participación de la Parte y, conforme a la Regla 19, el Árbitro, una vez designado, deberá planificar y proporcionar el aviso adecuado de una Audiencia u otra oportunidad para que la Parte que solicita el Arbitraje demuestre su derecho a recibir una medida de reparación.

(d) La fecha de inicio del Arbitraje es la fecha de la Carta de Inicio, pero no pretende ser aplicable a ningún requisito legal como el del plazo de prescripción, cualquier período de limitación contractual, o requisitos para el aviso de reclamaciones. El término “inicio” según es utilizado en esta Regla únicamente pretende aplicarse a la operación de esta y las demás Reglas (como la Regla 3, 13(a), 17(a), 31(a)).

## Regla 6. Asuntos Preliminares y Administrativos

(a) JAMS podrá convocar, o las Partes podrán solicitar, conferencias administrativas para analizar cualquier asunto procesal relacionado con la administración del Arbitraje.

(b) Si aún no ha sido designado un Árbitro, a solicitud de una de las Partes y en ausencia de un acuerdo entre ellas, JAMS podrá determinar la ubicación de la Audiencia, sujeto a la revisión del Árbitro. Al determinar la ubicación de la Audiencia se considerarán factores como el tema de la disputa, la conveniencia de las Partes y los testigos y los recursos relativos de las Partes, pero en ningún caso la Audiencia será planificada en una ubicación que impida la comparecencia del empleado.

(c) Si, en cualquier momento, cualquiera de las Partes no paga la totalidad de los honorarios o los gastos, JAMS podrá ordenar la suspensión o finalización de los procedimientos. JAMS podrá en ese caso informar a las Partes a fin de que una de ellas pueda anticipar el pago requerido. Si una de las Partes anticipa el pago adeudado por la Parte no pagadora, el Arbitraje deberá proceder y el Árbitro podrá asignar la

cuota de dichos costos de la Parte no pagadora, conforme a las Reglas 24(f) y 31(c). Una suspensión administrativa deberá registrar cualquier otro límite de tiempo contenido en estas Reglas o en el Acuerdo entre las Partes.

(d) JAMS no mantiene un registro oficial de los documentos presentados en el Arbitraje. Si las Partes desean que se les devuelva cualquiera de los documentos, deben notificar a JAMS por escrito en un lapso de treinta (30) días naturales de la fecha de finalización del Arbitraje. Si se requieren convenios especiales en relación con el mantenimiento de archivos o la conservación de documentos, se deberán acordar por escrito y JAMS se reserva el derecho de imponer una tarifa adicional por dichos convenios especiales. Los documentos que se envían para su presentación electrónica (e-filing) son conservados durante 30 días naturales después de la finalización del Arbitraje.

(e) Salvo que el Acuerdo de las Partes o la ley correspondiente estipulen lo contrario, JAMS, si se determina que los Arbitrajes presentados de esa forma tienen cuestiones de hecho o jurídicas en común, podrá consolidar los Arbitrajes en las siguientes ocasiones:

(i) Si una de las Partes presenta más de un Arbitraje ante JAMS, JAMS podrá consolidar los Arbitrajes en un Arbitraje único.

(ii) Cuando una Solicitud o Solicitudes de Arbitraje es o son presentada(s) designando a Partes que ya están involucradas en otro Arbitraje o Arbitrajes pendiente(s) en virtud de estas Reglas, JAMS podrá decidir que el nuevo caso o los nuevos casos deberá(n) ser consolidado(s) en uno o más de los procedimientos pendientes y deberá(n) ser remitido(s) a uno de los Árbitros o paneles de Árbitros que ya está(n) designado(s).

(iii) Cuando una Solicitud o Solicitudes de Arbitraje es o son presentada(s) designando a partes que no son idénticas a las Partes de un Arbitraje o Arbitrajes existente(s), JAMS podrá decidir que el nuevo caso o los nuevos casos deberá(n) ser consolidado(s) en uno o más de los procedimientos pendientes y deberá(n) ser remitido(s) a uno de los Árbitros o paneles de Árbitros que ya está(n) designado(s).

Cuando dicte su decisión, JAMS tomará en cuenta todas las circunstancias, incluidos los vínculos entre los casos y el progreso ya conseguido en los Arbitrajes existentes.

Salvo que la ley correspondiente estipule lo contrario, cuando JAMS decida consolidar un procedimiento en un Arbitraje pendiente, se considerará que las Partes del caso o casos consolidado(s) han renunciado a su derecho de designar a un Árbitro, así como a cualquier disposición contractual con respecto al sitio del Arbitraje.

1207-ADA-BAM Document 9-3 Filed 10/28/22

(f) Cuando un tercero procure participar en un Arbitraje que ya se encuentra pendiente en virtud de estas Reglas o cuando una Parte del Arbitraje en virtud de estas Reglas procure obligar a un tercero a participar en un Arbitraje pendiente, el Árbitro determinará dicha solicitud, tomando en cuenta todas las circunstancias que el Árbitro considere pertinentes y aplicables.

## Regla 7. Cantidad y Neutralidad de los Árbitros; Nombramiento y Autoridad del Presidente

(a) El Arbitraje lo realizará un Árbitro neutral salvo que las Partes acuerden lo contrario. En estas Reglas, el término "Árbitro" significará, según lo requiera el contexto, el Árbitro o el panel de Árbitros de un Arbitraje Tripartito.

(b) En los casos que involucren a más de un Árbitro, las Partes deberán acordar quién será el Presidente del Panel de Arbitraje, o en ausencia de un Acuerdo JAMS deberá designarlo. Si las Partes y los Árbitros lo acuerdan, un solo miembro del Panel de Arbitraje podrá, actuando independientemente, decidir los asuntos procesales y de exhibición de pruebas, incluida la realización de Audiencias para recibir documentos y testimonios de terceros que hayan sido citados judicialmente para producir documentación.

(c) Cuando las Partes hayan acordado que cada una de las Partes debe designar a un Árbitro, los Árbitros designados de este modo deberán ser neutrales e independientes de la Parte que realiza el nombramiento, salvo que las Partes hayan acordado que no sean neutrales.

## Regla 8. Notificación

(a) En cualquier momento el Árbitro podrá requerir la presentación y la notificación electrónica de los documentos del Arbitraje. Si un Árbitro requiere la presentación electrónica, las Partes deberán mantener y controlar con regularidad una dirección de correo electrónico válida, utilizable y activa para la recepción de todos los documentos presentados a través del Sistema de Presentación Electrónica de JAMS. Todo documento presentado electrónicamente se considerará presentado ante JAMS cuando se complete la transmisión al Sistema de Presentación Electrónica de JAMS. Todo documento presentado electrónicamente (e-filed) hasta las 11:59 p. m. (de la zona horaria del remitente) se considerará presentado en esa fecha. Tras la finalización de la presentación, el Sistema de Presentación Electrónica de JAMS emitirá un recibo de confirmación que incluirá la fecha y la hora de la recepción. El recibo servirá como comprobante de presentación.

Ex. A - pg. 32

(b) Todo documento presentado a través del Sistema de Presentación Electrónica de JAMS se considerará que ha sido firmado por el Árbitro, el Gerente del Caso, el abogado o declarante que envía el documento al Sistema de Presentación Electrónica de JAMS, y deberá contar con el nombre, la dirección, el número telefónico mecanografiados del abogado firmante. Los documentos que contengan firmas de terceros (es decir, peticiones sin oposición, declaraciones juradas, estipulaciones, etc.) también se podrán presentar electrónicamente indicando que las firmas originales están conservadas en formato impreso por la Parte que realiza la presentación.

(c) La entrega de los documentos por notificación electrónica (e-service) a través del Sistema de Presentación Electrónica de JAMS a otros usuarios registrados se considerará como notificación válida y efectiva, y tendrá el mismo efecto legal que un documento impreso original. Los destinatarios de documentos con notificación electrónica accederán a sus documentos a través del Sistema de Presentación Electrónica de JAMS. Se considerará que la notificación electrónica está completa cuando la Parte que inicia la notificación electrónica finaliza la transmisión del (de los) documento(s) electrónico(s) al Sistema de Presentación Electrónica de JAMS para su presentación y/o notificación electrónica. Tras la recepción real o implícita del (de los) documento(s) electrónico(s) por la Parte a la que se notifica, el Sistema de Presentación Electrónica de JAMS emitirá un Certificado de Notificación Electrónica para la Parte que inicie la notificación electrónica y este certificado servirá de comprobante de notificación. Se considerará que cualquiera de las Partes que ignore o intente rechazar la notificación electrónica ha recibido el (los) documento(s) electrónico(s) en un lapso de 72 horas posteriores a la transmisión del (de los) documento(s) electrónico(s) al Sistema de Presentación Electrónica de JAMS.

(d) Si una presentación o notificación electrónica no sucede debido a (1) un error en la transmisión del documento al Sistema de Presentación Electrónica de JAMS o que la Parte notificada era desconocida para la Parte remitente; (2) una falla al procesar el documento electrónico cuando era recibido por el Sistema de Presentación Electrónica de JAMS; (3) que la Parte fue excluida erróneamente de la lista de notificación; o bien (4) otros problemas técnicos experimentados por la parte que realiza la presentación, el Árbitro o JAMS podrán, por causa justificada, permitir que el documento sea presentado nunc pro tunc (con efecto retroactivo) a la fecha en que por primera vez se intentara el envío electrónico. O bien, en el caso de la notificación, la Parte tendrá, en ausencia de circunstancias extraordinarias, derecho a una orden para ampliar la fecha de cualquier respuesta por el período dentro del cual cualquier derecho, deber u otro acto deba ser realizado o ejercido.

(e) Para los documentos que no sean presentados electrónicamente, la notificación por una de las Partes en virtud de estas Reglas se efectúa proporcionando una copia firmada del documento a cada una de las Partes, dos copias en el caso de un Árbitro único y cuatro copias a JAMS en el caso de un panel tripartito. La notificación podrá realizarse por entrega en mano, por un servicio de entrega al día hábil siguiente o por el correo de EE. UU. La notificación mediante cualquiera de estos medios se considera efectiva en la fecha de depósito del documento.

(f) Al computar cualquier período de tiempo prescrito o permitido por estas Reglas para que una de las Partes actúe dentro de un período prescrito después de la entrega de un aviso u otro documento para la Parte, y el aviso o documento es entregado a la Parte únicamente por el servicio de correos de los EE. UU., se agregará al período prescrito tres (3) días naturales.

## Regla 9. Aviso de Reclamaciones

(a) Cada una de las Partes deberá proporcionar a la otra Parte un aviso razonable y oportuno de sus reclamaciones, defensas afirmativas o contrademandas. Dicho aviso deberá incluir una declaración breve de su base fáctica. Ninguna reclamación, reparación, contrademanda o defensa afirmativa será considerada por el Árbitro en ausencia de dicho aviso previo a las otras Partes, salvo que el Árbitro determine que ninguna de las Partes ha sido perjudicada injustamente por dicha falta de un aviso formal o que todas las Partes acuerden que dicha consideración es adecuada, independientemente de la falta de un aviso previo.

(b) El aviso de reclamaciones del demandante es la Solicitud de Arbitraje a la que se hace referencia en la Regla 5. Se deberá incluir una declaración de las reparaciones pretendidas. La Solicitud de Arbitraje podrá adjuntar e incorporar la copia de una Demanda presentada previamente ante un tribunal. En el último caso, el Reclamante podrá adjuntar a la demanda una copia de cualquier Respuesta a esa Demanda presentada por cualquier Demandado.

(c) En un lapso de catorce (14) días naturales de la entrega de un Aviso de Reclamación, el Demandado podrá enviar a JAMS y entregar a las otras Partes una respuesta y una declaración de cualquier defensa afirmativa, incluidas las impugnaciones jurisdiccionales o contrademandas que pudiera tener.

(d) En un lapso de catorce (14) días naturales de la entrega de una contrademanda, el Demandado podrá enviar a JAMS y entregar a las otras Partes una respuesta a dicha contrademanda y cualquier defensa afirmativa, incluidas las impugnaciones jurisdiccionales, que pudiera tener.

(e) Se considerará rechazada cualquier reclamación o contrademanda para la cual no se entregó ninguna respuesta.

(f) Se considerará que se renuncia a las impugnaciones jurisdiccionales en virtud de la Regla 11, a menos que se afirme en una respuesta a una Demanda o Contrademanda o poco después, cuando las circunstancias primero sugieran un problema de arbitrabilidad.

## Regla 10. Cambios de las Reclamaciones

Después de la presentación de una reclamación y antes del nombramiento del Árbitro, cualquiera de las Partes podrá realizar una reclamación nueva o diferente en contra de una Parte o un tercero que es objeto de Arbitraje en el procedimiento. Dicha reclamación deberá realizarse por escrito, presentarse ante JAMS y notificarse a las demás Partes. Cualquier respuesta a la nueva reclamación deberá realizarse en un lapso de catorce (14) días naturales después de la notificación de dicha reclamación. Después de que el Árbitro haya sido nombrado, no se podrá presentar ninguna reclamación nueva o diferente salvo que cuente con la aprobación del Árbitro. Una de las Partes podrá solicitar una Audiencia sobre esta cuestión. Cada una de las Partes tiene el derecho de responder a cualquier reclamación nueva o modificada conforme a la Regla 9(c) o (d).

## Regla 11. Interpretación de las Reglas y las Impugnaciones Jurisdiccionales

(a) Una vez que haya sido nombrado, el Árbitro resolverá las disputas acerca de la interpretación y la aplicabilidad de estas Reglas y la realización de la Audiencia de Arbitraje. La resolución del Árbitro con respecto a esta cuestión será definitiva.

(b) Las disputas jurisdiccionales y de arbitrabilidad, incluidas las disputas acerca de la formación, existencia, validez, interpretación o alcance del acuerdo en virtud del cual se procura el Arbitraje, y quiénes son las Partes adecuadas en el Arbitraje, deberán ser enviadas al Árbitro, que dictaminará sobre ellas. Salvo que la ley pertinente exija lo contrario, el Árbitro tiene la autoridad para determinar la jurisdicción y el arbitrabilidad de las cuestiones como un asunto preliminar.

(c) JAMS deberá resolver las disputas relacionadas con el nombramiento del Árbitro.

(d) Cuando sea necesario a efectos de facilitar el Arbitraje, el Árbitro podrá, por causa justificada o *sua sponte* (de oficio), ampliar cualquiera de las fechas límite establecidas en estas Reglas, estipulándose que el tiempo para dictar el Laudo únicamente podrá ser alterado conforme a las Reglas 22(i) o 24.

## Regla 12. Representación

(a) Las Partes, ya sean personas físicas o jurídicas, como sociedades anónimas, sociedades de responsabilidad limitada o sociedades colectivas, podrán ser representadas por un abogado o por cualquier otra persona a opción de las Partes. Cada una de las Partes deberá notificar por escrito con prontitud al Gerente de Casos y a las demás Partes el nombre, dirección, número telefónico y de fax y dirección de correo electrónico de su representante. El representante de una de las Partes podrá actuar en representación de la Parte cumpliendo con estas Reglas.

(b) Cambios en la Representación. Una de las Partes deberá notificar por escrito con prontitud al Gerente de Casos y a las demás Partes cualquier cambio en su representación, incluyendo el nombre, dirección, número telefónico y de fax y dirección de correo electrónico de su nuevo representante. Dicho aviso deberá expresar que el consentimiento por escrito del antiguo representante, si lo hubiera, y del nuevo representante, ha sido otorgado y deberá expresar la fecha de entrada en vigencia de la nueva representación.

## Regla 13. Retiro del Arbitraje

(a) Ninguna de las Partes podrá dar por finalizado un Arbitraje o retirarse del mismo después de la emisión de la Carta de Inicio (consultar la Regla 5), salvo mediante el Acuerdo por escrito de todas las Partes del Arbitraje.

(b) Una de las Partes que alegue una reclamación o contrademanda podrá retirar sin perjuicio y unilateralmente esa reclamación o contrademanda mediante la entrega de un aviso por escrito a las otras Partes y al Árbitro. Sin embargo, la Parte opositora podrá, en un lapso de siete (7) días naturales del aviso, solicitar que el Árbitro condicione el retiro a los términos que indique.

## Regla 14. Comunicaciones *ex parte*

(a) Ninguna de las Partes podrá tener comunicación ex parte con un Árbitro neutral, salvo según lo establecido en la sección (b) de esta Regla. El Árbitro (o Los Árbitros) podrá(n) autorizar a cualquiera de las Partes que se comuniquen directamente con el Árbitro (o Los Árbitros) mediante correo electrónico u otro tipo de correspondencia escrita, siempre y cuando se reenvíen copias simultáneamente al gerente de casos de JAMS y a las demás Partes.

(b) Una de las Partes podrá tener comunicaciones *ex parte* con su Árbitro neutral o no neutral nombrado, según sea necesario para garantizar los servicios del Árbitro y para asegurar la ausencia de conflictos, así como en conexión con la selección del Presidente del Panel Arbitral.

(c) Las Partes podrán acordar permitir comunicaciones ex parte más extensas entre una de las Partes y un Árbitro no neutral. Las comunicaciones más extensas con un Árbitro no neutral también podrían estar permitidas por la ley y las reglas de ética correspondientes.

## Regla 15. Selección, Divulgaciones y Reemplazo del Árbitro

(a) Salvo que el Árbitro haya sido previamente seleccionado mediante un acuerdo de las Partes, JAMS podrá tratar de facilitar el acuerdo entre las Partes en lo que respecta a la selección del Árbitro.

(b) Si las Partes no se ponen de acuerdo sobre un Árbitro, JAMS deberá enviar a las Partes una lista con al menos cinco (5) candidatos a Árbitro en el caso de un Árbitro único y diez (10) candidatos a Árbitro en el caso de un panel tripartito. Además, JAMS deberá proporcionar a cada una de las Partes una breve descripción de los antecedentes y la experiencia de cada uno de los candidatos a Árbitro. JAMS podrá reemplazar cualquiera o la totalidad de los nombres de la lista de candidatos a Árbitro por causa razonable en cualquier momento antes de que las Partes hayan enviado su elección conforme al subpárrafo (c) a continuación.

(c) En un lapso de siete (7) días naturales de la entrega de la lista con nombres a las Partes, cada una de las Partes podrá eliminar dos (2) nombres en el caso de un Árbitro único y tres (3) nombres en el caso de un panel tripartito, y deberá clasificar a los candidatos a Árbitro restantes en orden de preferencia. El candidato a Árbitro restante que cuente con la clasificación compuesta más alta será nombrado Árbitro. JAMS podrá otorgar a cualquiera de las Partes una ampliación razonable de tiempo para eliminar y clasificar a los candidatos a Árbitro sin el consentimiento de la otra Parte.

(d) Si este proceso no produce un Árbitro o un panel completo, JAMS deberá designar el Árbitro único o tantos miembros del panel tripartito como sean necesarios para completarlo.

(e) Si una de las Partes no responde a la lista de los candidatos a Árbitro en un lapso de (7) siete días naturales después de su entrega, o no responde conforme a las instrucciones proporcionadas por JAMS, esta considerará que esa Parte ha aceptado a todos los candidatos a Árbitro.

(f) Las entidades cuyos intereses no sean adversos con respecto a las cuestiones en disputa serán tratadas como una Parte única a efectos del proceso de selección del Árbitro. JAMS deberá determinar si los intereses entre las

entidades son adversos a los efectos de la selección del Árbitro, considerando factores como si las entidades están representadas por el mismo abogado y si las entidades están presentando posiciones conjuntas o separadas en el Arbitraje.

(g) Si, por cualquier motivo, el Árbitro seleccionado es incapaz de cumplir con sus deberes como Árbitro, deberá elegirse un Árbitro sucesor conforme a esta Regla. Si un miembro del panel de Árbitros no puede cumplir con sus obligaciones después del inicio de la Audiencia pero antes de la emisión del Laudo, se elegirá un nuevo Árbitro conforme a esta Regla salvo que, en el caso de un panel tripartito, las Partes acuerden proseguir con los dos Árbitros restantes. JAMS realizará la determinación definitiva en cuanto a si un Árbitro es incapaz de cumplir con sus deberes, y esa decisión será definitiva.

(h) Cualquier divulgación en relación con el Árbitro seleccionado se realizará según lo requerido por la ley o en un lapso de diez (10) días naturales a partir de la fecha de nombramiento. Dichas divulgaciones podrán ser proporcionadas en formato electrónico, estipulándose que JAMS presentará una copia impresa para cualquiera de las Partes que la solicite. Las Partes y sus representantes revelarán a JAMS cualquier circunstancia que pudiera dar lugar a dudas justificadas respecto de la imparcialidad o independencia del Árbitro, lo que incluye cualquier parcialidad o interés financiero o personal en el resultado del Arbitraje o cualquier relación pasada o presente con las Partes y sus representantes. La obligación del Árbitro, de las Partes y de sus representantes de realizar todas las divulgaciones requeridas continúa a lo largo del proceso de Arbitraje.

(i) En cualquier momento durante el proceso de Arbitraje, una Parte podrá impugnar la continuidad del servicio de un Árbitro por causa justificada. La impugnación deberá estar basada en información que no estaba disponible para las Partes en el momento en que el Árbitro fue seleccionado. Una impugnación justificada deberá hacerse por escrito y ser intercambiada con la Parte opositora, que podrá responder en un lapso de siete (7) días de la notificación de la impugnación. JAMS realizará la determinación definitiva en lo que respecta a dicha impugnación. Dicha determinación tomará en consideración la importancia relativa de los hechos y cualquier perjuicio a las Partes. Esa decisión será definitiva.

(j) Cuando las Partes hayan acordado que un Árbitro nombrado por una Parte será un Árbitro no neutral, ese Árbitro nombrado por una Parte no estará obligado a retirarse si se lo solicita únicamente la Parte que no nombró a ese Árbitro.

## Regla 16. Conferencia Preliminar

Por solicitud de cualquiera de las Partes o por indicaciones del Árbitro, se llevará a cabo una Conferencia Preliminar con las Partes o sus abogados o representantes. La conferencia preliminar podrá abordar cualquiera o todos los siguientes asuntos:

(a) El intercambio de información conforme a la Regla 17 o de otro modo;

(b) La planificación de la exhibición de pruebas según lo permitido por las Reglas, según lo acordado por las Partes o según lo requerido o autorizado por la ley correspondiente;

(c) Los alegatos de las Partes y cualquier acuerdo para aclarar o reducir las cuestiones o la estructura de la Audiencia de Arbitraje;

(d) La planificación de la Audiencia y cualquier intercambio de información, pruebas, peticiones o escritos antes de la Audiencia

(e) La comparecencia de testigos según lo contemplado por la Regla 21;

(f) La planificación de cualquier petición dispositiva conforme a la Regla 18;

(g) La marcación previa de las pruebas; preparación de las listas de pruebas conjuntas y la resolución de admisibilidad de las pruebas;

(h) La forma del Laudo; y

(i) Cualquier otro asunto que pudiera ser sugerido por las Partes o por el Árbitro.

La Conferencia Preliminar podrá ser llevada a cabo de manera telefónica y podrá ser reanudada periódicamente, según se justifique.

## Regla 17. Intercambio de Información

(a) Las Partes deberán cooperar de buena fe en el intercambio voluntario e informal de todos los documentos y demás información que no sean confidenciales (lo que incluye la información almacenada electrónicamente [electronically stored information ("ESI")] que sea pertinente para la disputa o reclamación, inmediatamente después del inicio del Arbitraje. Las Partes deberán completar un intercambio inicial de todos los documentos pertinentes, no confidenciales, lo que incluye, entre otros, las copias de todos los documentos en su posesión o control sobre los que confían a modo de apoyo para sus posiciones, los nombres de las personas que podrían llamar como testigos durante la Audiencia de Arbitraje, y los nombres

de todos los peritos que podrían llamar para testificar en la Audiencia de Arbitraje, junto con el informe de cada perito que podrá ser presentado ante la Audiencia de Arbitraje, en un lapso de veintiún (21) días naturales después que se hayan recibido todos los alegatos o avisos de reclamaciones. El Árbitro podrá modificar estas obligaciones durante la Conferencia Preliminar.

(b) Cada una de las Partes podrá tomar al menos un testimonio de una Parte opositora o de una persona que se encuentre bajo control de la Parte opositora. Las Partes deberán tratar de acordar la cantidad, el tiempo, ubicación y duración de los testimonios. En ausencia de un acuerdo, el Árbitro determinará estas cuestiones, inclusive si otorga o no una solicitud para testimonios adicionales, en función de la necesidad razonable de la información solicitada, la disponibilidad de otro tipo de exhibición de pruebas, y el carácter gravoso de la solicitud sobre las Partes opositoras y el testigo.

(c) En la medida en que tomen conocimiento de nuevos documentos o información, incluidos peritos que pudieran ser llamados a testificar, todas las Partes siguen estando obligadas a proporcionar documentos pertinentes no confidenciales a fin de complementar su identificación de los testigos y peritos y satisfacer cualquier acuerdo o compromiso informal entre las Partes en lo que respecta al intercambio de documentos o información. Los documentos que no fueron previamente intercambiados, los testigos y peritos que no fueron previamente identificados, no podrán ser considerados por el Árbitro en la Audiencia, salvo según lo acordado por las Partes o por causa justificada.

(d) Las Partes deberán notificar con prontitud a JAMS cuando exista una disputa relacionada con cuestiones de exhibición de pruebas. Se deberá organizar una conferencia con el Árbitro, ya sea por teléfono o en persona, y el Árbitro decidirá sobre la disputa. Con el consentimiento escrito de todas las Partes, y conforme a un procedimiento acordado por escrito, el Árbitro podrá nombrar a un perito especial para brindar asistencia en la resolución de una disputa sobre exhibición de pruebas.

## Regla 18. Testimonio Sumario de una Reclamación o Cuestión

El Árbitro podrá permitir que cualquier Parte presente una Petición para Testimonio Sumario de una reclamación o cuestión en particular, ya sea mediante el acuerdo de todas las Partes interesadas o mediante la solicitud de una de las Partes, estipulándose que las otras Partes interesadas deberán contar con un aviso razonable a fin de responder a la solicitud.

## Regla 19. Planificación y Ubicación de la Audiencia

(a) El Árbitro, después de consultar con las Partes que hayan comparecido, determinará la fecha, hora y ubicación de la Audiencia. El Árbitro y las Partes tratarán de planificar días de Audiencia consecutivos si es necesario más de un día.

(b) Si una de las Partes no ha participado en el proceso de Arbitraje, y el Árbitro considera razonablemente que la Parte no participará en la Audiencia, el Árbitro podrá establecer la Audiencia sin consultar con esa Parte. Se le brindará a la Parte que no participó un aviso de Audiencia con al menos treinta (30) días naturales antes de la fecha planificada, salvo que la ley de la jurisdicción pertinente permita, o las Partes hayan acordado, un período de aviso menor.

(c) El Árbitro, a efectos de escuchar a los testigos de un tercero, o para conveniencia de las Partes o de los testigos, podrá llevar a cabo la Audiencia en cualquier ubicación. Cualquier Centro de Resolución de JAMS podrá ser designado como una ubicación para la Audiencia a los fines de emitir una citación judicial o una citación judicial duces tecum para el testigo de un tercero.

## Regla 20. Presentaciones previas a la Audiencia

(a) Salvo según lo establecido en cualquier orden de planificación que pudiera ser adoptada, al menos catorce (14) días naturales antes de la Audiencia de Arbitraje, las Partes deberán presentar ante JAMS y entregar e intercambiar (1) una lista de los testigos que pretenden llamar, incluidos los peritos, (2) una breve descripción de testimonio previsto de cada uno de tales testigos y la duración estimada del testimonio directo del testigo, y (3) una lista de todas las pruebas destinadas a ser utilizadas en la Audiencia. Las Partes deberán intercambiar entre sí una copia de dichas pruebas en la medida en que no hayan sido intercambiadas previamente. Las Partes deberán marcar previamente las pruebas y tratarán de resolver antes de la Audiencia cualquier disputa relacionada con la admisibilidad de las pruebas.

(b) El Árbitro podrá requerir que cada una de las Partes presente por escrito una declaración concisa de su posición, lo que incluye resúmenes de los hechos y la evidencia que la Parte tiene previsto presentar, el análisis de la ley correspondiente y los fundamentos para el Laudo solicitado o el rechazo de la reparación pretendida. Las declaraciones, que podrían presentarse en forma de carta, deberán ser presentadas ante JAMS y entregadas a la otra Parte al menos siete (7) días naturales antes de la fecha

1207-ADA-BAM Document 9-3 Filed 10/28/22

de la Audiencia. A criterio del Árbitro se podrán permitir o requerir declaraciones de refutación u otras presentaciones por escrito previas a la Audiencia.

## Regla 21. Obtención de Testigos y Documentos para la Audiencia de Arbitraje

A solicitud por escrito de una de las Partes, todas las demás Partes presentarán para la Audiencia de Arbitraje todos los testigos especificados que se encuentren bajo su empleo o control sin necesidad de una citación judicial. El Árbitro podrá emitir citaciones judiciales para la comparecencia de testigos o para la presentación de documentos ya sea antes de o en el momento de la Audiencia conforme a esta Regla o la Regla 19(c). La citación judicial o citación judicial duces tecum se emitirá conforme a la ley correspondiente. Se podrán utilizar las citaciones judiciales en las jurisdicciones que las permitan. En el caso de que una Parte o una persona citada judicialmente presente una objeción para la presentación de un testigo u otro tipo de evidencia, la Parte o la persona citada judicialmente podrá presentar una objeción ante el Árbitro, que se pronunciará con prontitud sobre la objeción, sopesando tanto la carga sobre la Parte presentadora y el testigo como la necesidad del proponente del testigo o del otro tipo de evidencia.

## Regla 22. La audiencia de arbitraje

(a) El Árbitro normalmente llevará a cabo la Audiencia de Arbitraje de la manera estipulada en estas Reglas. El Árbitro podrá variar estos procedimientos si determina que es razonable y adecuado hacerlo. Está previsto que el Empleado comparezca en la Audiencia de Arbitraje, como lo haría cualquier otra parte individual que cuente con información acerca de una cuestión importante.

(b) El Árbitro determinará el orden de la prueba, que generalmente será similar al de un juicio.

(c) El Árbitro requerirá que los testigos testifiquen bajo juramento, si lo solicita alguna de las Partes, o de lo contrario queda a criterio del Árbitro.

(d) No se requiere la estricta conformidad con las reglas de evidencia, pero el Árbitro aplicará la ley correspondiente en lo que respecta a los privilegios y al producto del trabajo. El Árbitro tendrá en consideración la evidencia que estime relevante y fundamental para la disputa, dando a la evidencia la importancia adecuada. El Árbitro podrá ser guiado en esa determinación por los principios contenidos en las Reglas Federales de Evidencia o en cualquier otra regla de evidencia correspondiente. El Árbitro podrá limitar los testimonios para excluir la evidencia que sería no

Ex. A - pg. 42

sustancial o innecesariamente repetitiva, estipulándose que a todas las Partes se les brinda la oportunidad de presentar evidencia sustancial y pertinente.

(e) El Árbitro recibirá y considerará los testimonios pertinentes registrados mediante una transcripción o una cinta de video, estipulándose que las demás Partes han tenido la oportunidad de comparecer y realizar un contrainterrogatorio. El Árbitro podrá a su criterio considerar las declaraciones juradas de testigos u otro tipo de testimonio prestado incluso si la otra Parte no tuvo la oportunidad de realizar un contrainterrogatorio, pero brindará a esa evidencia únicamente la importancia que el Árbitro considere adecuada.

(f) Las Partes no ofrecerán como evidencia, y el Árbitro tampoco admitirá en acta ni tomará en consideración, las ofertas de conciliación anteriores realizadas por las Partes o las declaraciones o las recomendaciones hechas por un mediador u otra persona relacionada con los esfuerzos para resolver la disputa que es objeto de Arbitraje, salvo en la medida permitida por la ley correspondiente para la admisión de dicha evidencia.

(g) La Audiencia, o cualquier parte de la misma, podrá ser llevada a cabo telefónicamente con el acuerdo de las Partes o a discreción del Árbitro.

(h) Cuando el Árbitro determine que toda la evidencia y los argumentos pertinentes y sustanciales han sido presentados, y hayan sido emitidos algunos Laudos Provisorios o Parciales, el Árbitro declarará cerrada la Audiencia. El Árbitro podrá aplazar el cierre de la Audiencia hasta una fecha determinada por él para permitir que las Partes presenten escritos posteriores a la Audiencia que podrán ser en forma de carta, y/o expongan los argumentos finales. Si se presentarán escritos posteriores a la Audiencia o se expondrán los argumentos finales, se considerará que la Audiencia está cerrada tras la recepción por parte del Árbitro de dichos escritos o de la conclusión de dichos argumentos finales.

(i) En cualquier momento antes de que se dicte el Laudo, el Árbitro podrá reabrir la Audiencia, *sua sponte* o por solicitud por causa justificada de una de las Partes. Si la Audiencia es reabierta, el tiempo para dictar el Laudo se calculará a partir de la fecha en que el Árbitro declare cerrada la Audiencia que se ha reabierto.

(j) El Árbitro podrá proseguir con la Audiencia en ausencia de una de las Partes que no comparezca tras de recibir el aviso de Audiencia conforme a la Regla 19. El Árbitro no podrá dictar un Laudo únicamente sobre los fundamentos de ausencia o incumplimiento de la Parte, pero requerirá que cualquier Parte que procure una reparación presente dicha evidencia según lo pudiera requerir el Árbitro para el dictamen de un Laudo. Si el Árbitro considera razonablemente que una Parte

no comparecerá en la Audiencia, el Árbitro podrá planificar la Audiencia como una Audiencia telefónica y podrá recibir la evidencia necesaria a efectos de dictar un Laudo mediante una declaración jurada. El aviso de la Audiencia deberá especificar si será en persona o por teléfono.

(k) Cualquiera de las Partes podrá organizar que se realice un registro taquigráfico u otro tipo de registro de la Audiencia y deberá informar a las demás Partes antes de la Audiencia.

(i) La Parte solicitante afrontará el costo de dicho registro taquigráfico. Si todas las demás Partes acuerdan compartir el costo del registro taquigráfico, este deberá estar disponible para el Árbitro y podrá ser utilizado en el procedimiento.

(ii) Si no existe un acuerdo para compartir el costo del registro taquigráfico, este no se podrá proporcionar al Árbitro ni utilizar en el procedimiento salvo que la Parte organizadora del registro taquigráfico acuerde proporcionar acceso al registro taquigráfico, ya sea sin costo alguno o bajo términos que sean aceptables para las Partes y el servicio de informes.

(iii) Si las Partes convienen en el Procedimiento Opcional para la Apelación del Arbitraje (Regla 34), deberán garantizar que se realice un registro taquigráfico u otro tipo de registro de la Audiencia.

(iv) Las Partes podrán acordar que el costo del registro taquigráfico deberá o no ser asignado por el Árbitro en el Laudo.

## Regla 23. Renuncia a la Audiencia

Las Partes podrán acordar la renuncia a la Audiencia oral y presentar la disputa ante el Árbitro para un Laudo basado en las presentaciones escritas y demás evidencia según el acuerdo de las Partes.

## Regla 24. Laudos

(a) El Árbitro dictará un Laudo Definitivo o un Laudo Definitivo Parcial en un lapso de treinta (30) días naturales después de la fecha de cierre de la Audiencia según lo definido por la Regla 22(h) o (i), o bien, si se ha renunciado a la Audiencia, en un lapso de treinta (30) días naturales después de la recepción por parte del Árbitro de todos los materiales especificados por las Partes, salvo (1) por Acuerdo de las Partes; (2) por causa justificada para ampliar el plazo para dictar el Laudo; o bien (3) según lo dispuesto en la Regla 22(i). El Árbitro proporcionará el Laudo definitivo o el Laudo definitivo parcial a JAMS para su emisión conforme a esta Regla.

(b) Cuando un panel de Árbitros haya oído la disputa, la decisión y el Laudo de una mayoría del panel constituirá el Laudo Arbitral.

(c) Para determinar los méritos de la disputa, el Árbitro se guiará por las reglas jurídicas acordadas por las Partes. En ausencia de dicho acuerdo, el Árbitro se guiará por las normas jurídicas que considere son las más adecuadas. El Árbitro podrá otorgar cualquier reparación o compensación que sea justa y equitativa y se encuentre dentro del alcance del acuerdo de las Partes, lo que incluye, entre otros, el cumplimiento específico de un contrato o cualquier otra reparación legal o equitativa.

(d) Además del Laudo Definitivo o del Laudo Definitivo Parcial, el Árbitro podrá tomar otras decisiones, lo que incluye dictámenes provisorios o parciales, órdenes y Laudos.

(e) Medidas Provisorias. El Árbitro podrá otorgar cualquier medida provisoria que considere necesaria, incluyendo un desagravio judicial y una medida de protección o conservación de propiedad y la enajenación de bienes desechables. Dichas medidas provisorias podrán tomar la forma de un Laudo Provisorio, y el Árbitro podrá requerir una garantía para los costos de dichas medidas. Cualquier recurso de una Parte ante un tribunal para obtener una reparación provisoria o interina no se deberá considerar como incompatible con el acuerdo para arbitrar o como una renuncia al derecho de arbitraje.

(f) El Laudo del Árbitro podrá asignar tarifas de Arbitraje y una remuneración y gastos para el Árbitro, salvo que dicha asignación esté expresamente prohibida por el Acuerdo entre las Partes o por la ley correspondiente. (Dicha prohibición no podrá limitar la facultad del Árbitro para asignar tarifas de Arbitraje y una remuneración y gastos para el Árbitro conforme a la Regla 31(c)).

(g) El Laudo del Árbitro podrá asignar honorarios y gastos de abogados e intereses (a la tasa y desde la fecha que el Árbitro considere adecuados) si está estipulado en el Acuerdo de las Partes o está permitido por la ley correspondiente. Cuando el Árbitro esté autorizado para adjudicar honorarios de abogados y deba determinar el monto razonable de dichos honorarios, podría considerar si la falta de cooperación razonable de una Parte en el proceso de admisión de pruebas y/o el cumplimiento de las órdenes para la exhibición de pruebas del Árbitro ocasionaron el retraso del procedimiento o significaron costos adicionales para las demás Partes.

(h) El Laudo consistirá en una declaración por escrito firmada por el Árbitro en relación con la disposición de cada reclamación y la reparación, si la hubiera, en cuanto a cada reclamación. El Laudo también deberá contener una declaración concisa por escrito de los motivos del Laudo, expresando los hallazgos cruciales y las conclusiones que

son el fundamento del Laudo. Las Partes podrán acordar cualquier otra forma de Laudo, salvo que el Arbitraje esté basado en un acuerdo de Arbitraje que sea requerido como una condición para una relación laboral

(i) Después que se haya dictado el Laudo, y siempre que las Partes hayan cumplido con la Regla 31, el Laudo se emitirá mediante la entrega de copias a las Partes. La notificación podrá realizarse por el servicio de correos de los EE. UU. No es necesario enviarla por correo certificado o registrado.

(j) En un lapso de siete (7) días naturales después de la notificación de un Laudo Definitivo Parcial o un Laudo Definitivo por Parte de JAMS, cualquier Parte podrá entregar a otra Parte y a JAMS una solicitud para que el Árbitro corrija cualquier error computacional, tipográfico u otro error similar presente en el Laudo (inclusive la reasignación de los honorarios conforme a la Regla 31 o a causa del efecto de una oferta de permitir sentencia), o el Árbitro podrá, sua sponte, proponer la corrección de dichos errores presentes en el Laudo. La Parte que se oponga a dicha corrección contará con siete (7) días naturales posteriores durante los cuales puede presentar alguna objeción. El Árbitro podrá realizar cualquier corrección necesaria y adecuada al Laudo en un lapso de veintiún (21) días naturales de la recepción de una solicitud o catorce (14) días naturales después de la propuesta del Árbitro para realizar la corrección. El Árbitro podrá ampliar el lapso de tiempo en el cual puede realizar las correcciones por causa justificada. El Laudo corregido se notificará a las Partes de la misma forma en que se notificó el Laudo.

(k) El Laudo es considerado definitivo, a los efectos de un Procedimiento Opcional para la Apelación del Arbitraje conforme a la Regla 34 o bien un procedimiento judicial para ejecutar, modificar o revocar el Laudo conforme a la Regla 25, catorce (14) días naturales después de que la notificación se considere efectiva si no se realiza ninguna solicitud de corrección, o en la fecha de notificación efectiva del Laudo corregido.

## Regla 25. Ejecución del Laudo

Los procedimientos para ejecutar, confirmar, modificar o revocar un Laudo serán controlados por y se llevarán a cabo conforme a la Ley Federal de Arbitraje, Sección 1 y siguientes del Título 9 del Código de los EE. UU. (U.S. Code, USC) o la ley estatal correspondiente. Se considerará que las Partes en un Arbitraje en virtud de estas Reglas han brindado su consentimiento para que la sentencia de un Laudo pueda ser presentada ante cualquier tribunal que cuente con la jurisdicción correspondiente.

## Regla 26. Confidencialidad y Privacidad

(a) JAMS y Árbitro mantendrán el carácter confidencial de la naturaleza del proceso de Arbitraje y el Laudo, inclusive la Audiencia, salvo según lo necesario en relación con una impugnación judicial de un Laudo o su ejecución, o salvo que la ley o una decisión judicial requieran lo contrario.

(b) El Árbitro podrá emitir órdenes para proteger la confidencialidad de la información exclusiva, los secretos comerciales y otra información confidencial.

(c) Sujeto al criterio del Árbitro o al acuerdo de las Partes, ninguna persona que tenga un interés directo en el Arbitraje podrá comparecer en la Audiencia de Arbitraje. El Árbitro podrá excluir a cualquier Parte que no sea parte de una Audiencia.

## Regla 27. Renuncia

(a) Si una Parte tiene conocimiento de la violación o del incumplimiento de estas Reglas y no objeta con prontitud por escrito, se considerará que se renunció a la objeción, salvo que el Árbitro determine que la renuncia ocasionará una injusticia o adversidad considerable.

(b) Si cualquiera de las Partes tiene conocimiento de información que podría fundamentar una impugnación justificada para la continuidad del servicio del Árbitro, dicha impugnación de debe realizar con prontitud por escrito al Árbitro o a JAMS. El hecho de no hacerlo constituirá una renuncia a cualquier objeción a la continuidad de servicios por parte del Árbitro.

## Regla 28. Laudo de Conciliación y Consentimiento

(a) Las Partes podrán acordar, en cualquier etapa del proceso de Arbitraje, la presentación del caso ante JAMS para su mediación. El mediador de JAMS asignado al caso no podrá ser el Árbitro o un miembro del Panel de Apelación, salvo que sea acordado así por las Partes conforme a la Regla 28(b).

(b) Las Partes podrán acordar procurar la asistencia del Árbitro para llegar a una conciliación. Mediando el acuerdo por escrito de las Partes de presentar el asunto ante el Árbitro para que asista en la conciliación, se considerará que las Partes han acordado que la asistencia del Árbitro en tales esfuerzos de conciliación no descalificarán al Árbitro de continuar prestando servicios como Árbitro en caso que no se llegue a una conciliación; y tampoco se deberá sostener ante un tribunal de revisión que dicha asistencia es un fundamento para revocar o modificar un Laudo.

(c) en cualquier etapa del proceso de Arbitraje, todas las Partes acuerdan una conciliación de las cuestiones en disputa y solicitaron al Árbitro que plasme el acuerdo en un Laudo de Consentimiento, el Árbitro deberá cumplir con dicha solicitud, salvo que el Árbitro considere que los términos del acuerdo son ilegales o que desvirtúan la integridad del proceso de Arbitraje. Si el Árbitro está preocupado acerca de las posibles consecuencias del Laudo de Consentimiento propuesto, deberá informar a las Partes esa preocupación y podrá solicitar información específica adicional de las Partes en relación con el Laudo de Consentimiento propuesto. El Árbitro podrá rechazar la celebración del Laudo de Consentimiento propuesto y podrá retirarse del caso.

## Regla 29. Sanciones

El árbitro podrá ordenar las sanciones adecuadas por el incumplimiento de una parte con sus obligaciones en virtud de cualquiera de estas Reglas o con una orden del árbitro. Estas sanciones podrán incluir, pero no se limitarán a, el cálculo de las tarifas de arbitraje y la remuneración y gastos del árbitro; cualquier otro costo ocasionado por la conducta procesable, inclusive los honorarios razonables de abogados; la exclusión de ciertas evidencias; las inferencias adversas; o bien, en casos extremos, la determinación de una cuestión o cuestiones presentadas ante arbitraje que sean adversas para la parte que incurrió en el incumplimiento.

## Regla 30. Descalificación del Árbitro como un Testigo o una de las Partes y Exclusión de Responsabilidad

(a) Las Partes no podrán llamar al Árbitro, el Gerente de Casos o cualquier otro empleado o agente de JAMS como testigo o como perito en cualquier litigio pendiente o subsecuente u otro procedimiento que involucre a las Partes y se relacione con la disputa que es objeto de Arbitraje. El Árbitro, el Gerente de Casos o cualquier otro empleado o agente de JAMS también son incompetentes para testificar como testigos o peritos en dicho procedimiento.

(b) Las Partes deberán defender y/o pagar el costo (inclusive cualquier honorario de abogados) de la defensa del Árbitro, el gerente de casos y/o JAMS de cualquier citación judicial proveniente de Partes externas que surjan del Arbitraje.

(c) Las Partes acuerdan que ni el Árbitro, ni el Gerente de Casos y tampoco JAMS son necesariamente una Parte del litigio u otro procedimiento relacionado con el Arbitraje o el tema del Arbitraje, y tampoco el Árbitro, el Gerente de Casos o JAMS, incluidos sus empleados o agentes, serán responsables ante cualquier Parte por acto u omisión alguna

en relación con cualquier Arbitraje realizado en virtud de estas Reglas, inclusive, entre otros, cualquier descalificación o recusación del Árbitro.

## Regla 31. Honorarios

(a) Salvo según lo estipulado en el párrafo (c) a continuación, y que las Partes hayan acordado una asignación diferente, cada una de las Partes deberá pagar su cuota prorrateada de los honorarios y gastos de JAMS según lo establecido en la planilla de honorarios de JAMS vigente al momento del inicio del Arbitraje. En la medida de lo posible, la asignación de dichos honorarios y gastos no será divulgada al Árbitro. El acuerdo de JAMS para prestar servicios se brinda conjuntamente con la Parte y el abogado u otro representante de la Parte en el Arbitraje. La falta de pago de los honorarios podría resultar en una suspensión administrativa del caso conforme a la Regla 6(c).

(b) JAMS requiere que las Partes depositen los honorarios y los gastos del Arbitraje periódicamente durante el transcurso de los procedimientos y antes de la Audiencia. El Árbitro podrá prohibir que una Parte que no haya depositado su cuota *prorrateada* o acordada de los honorarios y gastos ofrezca evidencia en cualquier reclamación afirmativa durante la Audiencia.

(c) Si un Arbitraje se basa en una cláusula o acuerdo que es requerido como condición de relación laboral, el único honorario que un empleado estará obligado a pagar es el honorario inicial para la gestión de casos de JAMS. JAMS no impide que un empleado contribuya con los gastos y honorarios administrativos y del Árbitro. Si un Arbitraje no se basa en una cláusula o acuerdo que es requerido como una condición de relación laboral, las Partes son mancomunada y solidariamente responsables del pago de los honorarios del Arbitraje de JAMS y la remuneración y los gastos del Árbitro. En el caso de que una Parte haya pagado más que su cuota de dichos honorarios, remuneración y gastos, el Árbitro podrá adjudicar contra cualquier otra Parte dichos honorarios, remuneración y gastos que dicha Parte adeude con respecto al Arbitraje.

(d) Las entidades cuyos intereses no son adversos con respecto a las cuestiones en disputa serán tratadas como una Parte única a efectos del cálculo de honorarios de JAMS. JAMS determinará si los intereses entre las entidades son adversos a los efectos de los honorarios, considerando factores como si las entidades están representadas por el mismo abogado y si las entidades están presentando posiciones conjuntas o separadas en el Arbitraje.

1207-ADA-BAM Document 9-3 Filed 10/28/22

## Regla 32. Opción de Arbitraje con Límites (bracketed) (o máximo/mínimo)

(a) En cualquier momento antes de la emisión del Laudo arbitral, las Partes pueden acordar, por escrito, los montos mínimos y máximos de daños que pueden ser adjudicados para cada reclamación o para todas las reclamaciones en su totalidad. Las Partes deberán notificar a JAMS con prontitud y proporcionarle una copia del acuerdo por escrito que establece los montos máximos y mínimos acordados.

(b) JAMS no informará al Árbitro del acuerdo para proseguir con esta opción o de los niveles mínimos y máximos acordados sin el consentimiento de las Partes.

(c) El Árbitro dictará el Laudo conforme a la Regla 24.

(d) En el caso de que el Laudo del Árbitro se encuentre entre los montos máximos y mínimos acordados, el Laudo se volverá definitivo tal como está. En el caso de que el Laudo se encuentre por debajo del monto mínimo acordado, el Laudo definitivo emitido deberá ser corregido para reflejar el monto mínimo acordado. En el caso de que el Laudo se encuentre por encima del monto máximo acordado, el Laudo definitivo emitido será corregido para reflejar el monto máximo acordado.

## Regla 33. Opción de Arbitraje de Oferta Definitiva (o de Béisbol)

(a) Tras el acuerdo de las Partes para utilizar la opción establecida en esta Regla, al menos siete (7) días naturales antes de la Audiencia de Arbitraje, las Partes deberán intercambiar y proporcionar a JAMS las propuestas por escrito del monto de dinero por daños que ofrecerían o solicitarían, según corresponda, y que consideren apropiadas en función del estándar establecido en la Regla 24(c). JAMS deberá proporcionar con prontitud al Árbitro una copia de las propuestas de las Partes, salvo que las Partes acuerden que no deben entregarse al Árbitro. En cualquier momento antes del cierre de la Audiencia de Arbitraje, las Partes podrán intercambiar las propuestas o solicitudes revisadas por escrito, las cuales reemplazarán a todas las propuestas anteriores. Las propuestas revisadas por escrito deberán ser proporcionadas a JAMS, el cual deberá proporcionarlas con prontitud al Árbitro, salvo que las Partes acuerden lo contrario.

(b) Si el Árbitro ha sido informado de las propuestas por escrito, al dictar el Laudo el Árbitro elegirá entre las últimas propuestas de las Partes, seleccionando la propuesta que el Árbitro considere más razonable y adecuada en vista del estándar establecido en la Regla 24(c). Esta disposición modifica la Regla 24(h) en que no deberá acompañar al Laudo ninguna declaración escrita de los motivos.

Ex. A - pg. 50

(c) Si el Árbitro no ha sido informado de las propuestas por escrito, el Árbitro dictará el Laudo como si estuviera en conformidad con la Regla 24, salvo que posteriormente el Laudo será corregido para ajustarse a la última de las propuestas más cercanas, y la última de las propuestas más cercanas se convertirá en el Laudo.

(d) Con excepción de lo dispuesto en el presente documento, se aplicarán las disposiciones de la Regla 24.

## Regla 34. Procedimiento Opcional para la Apelación del Arbitraje

Las Partes podrán ponerse de Acuerdo en cualquier momento con respecto al Procedimiento Opcional para la Apelación del Arbitraje de JAMS. Todas las Partes deberán plasmar por escrito su acuerdo a efectos de que dicho procedimiento entre en vigor. Una vez que una Parte se ponga de acuerdo con respecto al Procedimiento Opcional para la Apelación del Arbitraje, no puede retirarse unilateralmente del mismo, salvo que se retire del Arbitraje, conforme a la Regla 13.

These Rules have been translated from the English language version of JAMS Employment Arbitration Rules. In the event of any inconsistency between the English version and the Spanish version, the English version shall apply and be binding upon the Parties. (Estas Reglas fueron traducidas de la versión en idioma inglés de JAMS Employment Arbitration Rules. En caso de inconsistencia entre la versión en inglés y la versión en español, la versión en inglés deberá prevalecer y ser vinculante para las partes.)

800.352.5267 | www.jamsadr.com